**INDIANA DEPARTMENT OF NATURAL RESOURCES, Appellant–Respondent,**

v.

**HOOSIER ENVIRONMENTAL COUNCIL, INC., Appellee–Petitioner.**

No. 49A05–0409–CV–493.

Court of Appeals of Indiana.

July 26, 2005.

Rehearing Denied Oct. 3, 2005.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, for Appellant.

Michael A. Mullett, Mullett, Polk & Associates, LLC, Indianapolis, for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Respondent Indiana Department of Natural Resources ("DNR") appeals the trial court's order determining that Appellee–Petitioner Hoosier Environmental Council, Inc. ("HEC") is entitled to all of its fees and costs under Indiana Code Section 14–34–15–10. We affirm in part, reverse in part, and remand.

### Issue

DNR raises one issue, which we restate as whether the trial court erred by substituting its judgment for that of the Natural Resource Commission when it determined that HEC was entitled to all of its fees and costs under Indiana Code Section 14–34–15–10.

### Facts and Procedural History

On May 10, 1995, DNR approved an application filed by Foertsch Construction Company ("Foertsch") to amend its existing surface coal mining permit in order to allow the disposal of coal combustion waste ("CCW") on the permitted site in Daviess County. On June 9, 1995, HEC filed a petition for administrative review of the approval and requested injunctive relief. HEC alleged several problems with the permit amendment:

7. The permit fails to meet the requirements of ISMCRA [Indiana Surface Mining Control and Reclamation Act] (IC 13–4.1) and its regulations and does not comply with requirements to supply information, characterize the site and its interactions with CCW and monitor the disposal of

CCW that are found in Memorandum 92–1.

8. The permit fails to define or characterize the premining hydrologic balance as required by ISMCRA and its regulations. The premining hydrologic balance has also not been defined or characterized by the mining permit, # S–00312, that is being amended by this permit.

9. Three aquifers have been identified by monitoring wells in the permit area, but the permit fails to characterize any of them as required by ISMCRA and its regulations. Bail tests done for the permit revealed sufficient water in these aquifers to readily provide domestic water supply for multiple residences making them aquifers that must be characterized and protected under ISMCRA.

10. The permit does not provide adequate site specific data about the permeability of strata in the mine or the hydrology of the mine area as required by Memorandum 92–1 and ISMCRA. The extent of aquifers, direction of ground water flow and rate of flow of ground water has not been determined correctly or to any degree in most instances, as required by Memorandum 92–1 and ISMCRA. The permit fails to place monitoring wells in positions that will monitor down gradient or up gradient water from the CCW disposal areas as required by Memorandum 92–1 and ISMCRA. The permit does not include six months of baseline ground water monitoring data as required by Memorandum 92–1 and ISMCRA.

11. The permit will deliberately place millions of tons of toxic-forming material into direct contact with ground water in the Little Sandy # 10 Mine in violation of ISMCRA and its regulations which prohibit such contact.

12. The permit provides no analysis, detailed approximations or even projections of the leachate that will form in the coal combustion waste (CCW) disposal areas. The permit has no detailed discussion of the geochemistry that will take place as a result of CCW disposal as required by Memorandum 92–1 and ISMCRA.

13. The permit provides no plan to monitor and avoid impacts to the offsite hydrologic balance as required by ISMCRA and its regulations. Such a plan would include monitoring groundwater at this mine down gradient from the disposal sites once the postmining equilibrium of ground water flow has been established so that monitoring wells on the perimeter of disposal areas will monitor more than just ground water flowing into the mine. The permit does not attempt to determine when this point in time will occur and hence provides for no monitoring of groundwater at the Little Sandy # 10 Mine at this point in time. Evidence from other mine dewatering operations implies that a much greater length of time will be needed to monitor down gradient ground water from the disposal areas at this mine than that period provided by the release of bonds for surface revegetation.

14. The permit includes no plan to minimize or remediate adverse impacts to the offsite hydrologic balance as required by ISMCRA and its regulations. The permit establishes no levels of contamination of ground water which if surpassed will trigger or require any remedial activity.

15. The permit is not complete. ISMCRA and its regulations require

that only administratively and technically complete permits be issued so that a determination can be made that the protection of the hydrologic balance has been assured and all other requirements of ISMCRA are being adhered to by the permit. The following are examples of the permit's violation of this requirement:

\* The permit does not include any current ash leaching data from the generators of ash that will be disposed at this site.

\* The copy of this permit provided to HEC by the Division of Reclamation after the permit was issued, (which copy was paid for by HEC) includes no information that characterizes the combustion and pollution control processes that produce the ash from one of the generators.

\* Additionally the permit does not include data from six months of baseline ground water quality monitoring, or any information about the background water quality or water levels to have been measured by the monitoring well that was to be installed near drill hole # 3. All of this information and much additional information which was requested as modifications to the permit in a letter dated January 17, 1995 and signed by Michael Sponsler, Director of Division of Reclamation, is not in the final permit as issued on May 10, 1995.

\* Similarly rather than committing to final drainage ways and surface land contours required under ISMCRA and its regulations to be shown on a final contour map, the permit states that disposal needs and requirements will allow the operator to alter (to an unspecified extent) final contours, post mining drainage ways and even the locations of monofills as the CCW disposal operation proceeds.

16. The permit is based upon statements and data known to be inaccurate in violation of ISMCRA and its regulation. For example, IDOR staff concede that much of the baseline ground water quality monitoring data in the permit for CCW monitoring wells # 2 and # 3 is of very questionable value and probably resulted from improper methods and procedures being used to take samples from these wells. The permit is replete with other examples of inaccurate and/or completely incorrect statements or assertions.

Appellant's App. at 178–80. HEC asserted that the permit should be denied and requested that the permit be stayed.

The Natural Resources Commission ("NRC") assigned Administrative Law Judge William Teeguarden to hear the case. Over several months, Judge Teeguarden heard twelve days of expert testimony, and the parties filed approximately 275 pages of briefs. On October 10, 1996, Judge Teeguarden issued a non-final order. This order set out ten issues raised by the parties, as follows:

a. Whether or not the petition for review was timely filed.

b. Whether or not collateral estoppel applies to a number of issues.

c. Whether or not there is an adequate characterization of pre-existing geological and hydrological conditions.

d. Whether or not the monitoring wells are sufficient in number, construction, and design.

e. Whether or not there is adequate isolation and separation of the CCW to prevent damage from occurring.

f. Whether or not the lack of compliance criteria should invalidate the permit.

g. Whether or not there should be a mechanism in the permit to restrict future land use or caution future buyers.

h. Whether or not the amount of CCW allowed to be back filled should bear some relationship to the amount of coal extracted.

i. Whether or not some mechanism must be in place to require long term monitoring of the site.

j. Whether or not the testing of the proposed waste was adequate.

Appellant's App. at 185. Judge Teeguarden approved the issuance of the permit subject to the following additional permit conditions:

a. Once coal combustion waste disposal has commenced on a parcel of leased property, the operator shall file an affidavit with the Daviess County Recorder which contains the legal description of the property and a statement that coal combustion waste has been disposed on the property. The affidavit shall also include a statement that information as to the location of the disposal and other relevant information may be obtained from the Division of Reclamation of the Indiana Department of Natural Resources.

b. The total volume of coal combustion waste approved for disposal, as specified on page 1 of permit S–312–1, is reduced by 75%.

c. An application for final bond release must show the area addressed by the application has completely recharged and groundwater flow has stabilized before the application can be approved.

d. No coal combustion waste can be disposed of on site until the operator provides the department with base line testing results of groundwater for 33 parameters which are valid and meaningful and which are not considered flawed by the laboratory.

Appellant's App. at 201.

The NRC adopted Judge Teeguarden's non-final order in its entirety, with the exception that it altered condition (b) so that CCW was reduced by only 50 percent. HEC and Foertsch petitioned for judicial review of the NRC's final order, and the Daviess County Circuit Court ultimately denied the petitions on September 13, 1997.

Following the NRC's final order, HEC petitioned the NRC for costs and attorney fees. A special administrative law judge found that HEC should be awarded costs in the amount of $188,906.44. The NRC dissolved the special ALJ's findings, and denied HEC's petition in a final order dated July 22, 2003. HEC sought judicial review, and HEC and DNR filed motions for summary judgment. The trial court determined that the NRC abused its discretion because HEC was eligible for fees and was entitled to an award in the aggregate of its claimed fees and expenses, and reversed the NRC decision. DNR filed a motion to correct error, which the trial court denied. This appeal ensued.

**Discussion and Decision**

*A. Standard of Review*

When we review the decision of an administrative agency, we are bound by the same standard of review as the trial court. *Andrianova v. Ind. Family & Soc. Servs. Admin.*, 799 N.E.2d 5, 7 (Ind.Ct. App.2003). We may neither try the case de novo nor substitute our judgment for that of the agency. *Ind. Dep't of Envtl. Mgmt. v. Schnippel Constr., Inc.*, 778 N.E.2d 407, 412 (Ind.Ct.App.2002), *trans.*

*denied.* We will reverse an administrative decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." Ind. Code § 4–21.5–5–14(d)(1)–(5).

### B. Analysis

The present case involves an issue of first impression in the application of Indiana Code Section 14–34–15–10 and 312 Indiana Administrative Code 3–1–13, which govern the award of costs to certain parties involved in an ISMCRA proceeding. We addressed the history of ISMCRA in *Peabody Coal Co. v. Ind. Dep't of Nat. Resources,* 629 N.E.2d 925 (Ind.Ct. App.1994), *summarily affirmed in part,* 664 N.E.2d 1171 (Ind.1996), as follows:

> In 1977, after previous attempts in 1973 and 1975, Congress passed, and the President signed, the Surface Mining Control and Reclamation Act (SMCRA) [30 U.S.C. § 1201 et seq.]. SMCRA is designed to provide a uniform nationwide program for the reclamation of land affected by surface coal mining operations. 30 U.S.C.A. § 1202. Uniformity is to be achieved, however, not through direct United States Department of the Interior control of surface mining across the nation, but rather through Interior Department oversight authority over state programs which must be at least as stringent as the federal program. 30 U.S.C.A. §§ 1253, 1271(d). If a state fails to develop a program, or fails to develop an acceptable program after the Secretary of the Interior has rejected a proposed program, the state will not obtain permanent regulatory authority, and a federal

> plan will be imposed. 30 U.S.C.A. § 1254; *Hodel v. Indiana* (1981), 452 U.S. 314, 319–20, 101 S.Ct. 2376, 2380–81, 69 L.Ed.2d 40. Once a state has obtained permanent regulatory authority, it must labor diligently to enforce its approved program vigorously, or the Interior Department will take over enforcement duties. 30 U.S.C.A. §§ 1254(b), 1271(b). Indiana achieved permanent regulatory authority, known as "primacy," on July 29, 1982. *See* C.F.R. § 914.10 (1991).

\* \* \* \* \*

> [Indiana's act, the ISMCRA] is largely a copy of the SMCRA .... In enacting the [ISMCRA], our General Assembly made clear its unequivocal intent to avoid federal control of Indiana surface coal mining and land reclamation. See Ind.Code 13–4.1–1–1(4); 13–4.1–1–2(1). Indeed, the first purpose of the [ISMCRA] is to implement and enforce SMCRA. *Id.* Therefore, because our first goal in construing a statute is to give effect to the intent of the legislature, [citation omitted], we will look to SMCRA and the federal rules adopted under it as we analyze the [ISMCRA].

*Id.* at 930–31 (quoting *Ind. Dep't of Nat. Resources v. Krantz Bros. Const. Corp.,* 581 N.E.2d 935, 937 (Ind.Ct.App.1991)).

 Generally, awards of fees are governed by the American Rule, under which each party bears its own costs. *Rogers Group Inc. v. Diamond Builders LLC,* 816 N.E.2d 415, 420 (Ind.Ct.App. 2004), *trans. denied.* However, exceptions to the American Rule exist where certain fee-shifting statutes give a court or agency discretion to order one party to pay another party's reasonable attorney fees. *See, e.g., Buckhannon Bd. & Care Home v. West Virginia Dep't of Health & Human*

*Res.*, 532 U.S. 598, 603–04, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (interpreting Fair Housing Amendments Act and Americans with Disabilities Act). Even under fee-shifting statutes, however, an award of attorney fees may be proper only if the requesting party obtained "some degree of success on the merits." *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 694, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983).

■ In interpreting ISMCRA, both parties turn to precedent from other jurisdictions concerning the application of other jurisdiction's SMCRA fee-shifting provisions. Based upon this precedent, HEC and DNR agree that the examination of an award of fees involves a two-prong analysis, as set forth in *West Virginia Highlands Conservancy, Inc. v. Norton,* 343 F.3d 239 (4th Cir.2003). First, there is an eligibility requirement, in which a party must demonstrate that it achieved at least some degree of success on the merits of the party's claim. *Id.* at 245. If the party is able to demonstrate that it is eligible for an award of costs, the focus shifts to an entitlement requirement, wherein the party must demonstrate that it made a substantial contribution to the determination of the issues. *Id.*

In its brief, DNR concedes that the NRC erred in concluding that HEC was not eligible for an award. Accordingly, our focus shifts to whether HEC is entitled to fees under Indiana Code Section 14–34–15–10. Under ISMCRA and the regulations promulgated thereunder, the NRC may award costs, including attorney fees, in certain situations. Indiana Code Section 14–34–15–10 provides:

Whenever an order is issued:

(1) under this chapter or under IC 13–4.1–11 (before its repeal); or

(2) as a result of an administrative proceeding under this article or under IC 13–4.1 (before its repeal) instituted at the request of a person;

the court, resulting from judicial review, or the commission may assess against either party to the proceeding an amount of money, determined by the commission, equal to the aggregate amount of all costs and expenses, including attorney's fees, reasonably incurred by the person for or in connection with the person's participation in the proceedings, including any judicial review of agency actions.

More specifically, 312 I.A.C. 3–1–13 outlines who and how one may receive an award, in pertinent part, as follows:

(a) This section governs an award of costs and expenses reasonably incurred, including attorney fees, under IC 14–22–26–5, IC 14–24–11–5, IC 14–34–15–10, or IC 14–37–13–7.

* * * * *

(d) Appropriate costs and expenses, including attorney fees, may be awarded under IC 14–34–15–10 only as follows:

* * * * *

(2) To a person from the department, other than to a permittee or the permittee's authorized representative, who initiates or participates in a proceeding and who prevails in whole or in part, achieving at least some degree of success on the merits, upon a finding that the person made a substantial contribution to a full and fair determination of the issues.

* * * * *

(f) In determining what is a reasonable amount of attorney fees under subsection (b), consideration shall be given to the following factors:

(1) The nature and difficulty of the proceeding.

(2) The time, skill, and effort involved.

(3) The fee customarily charged for similar legal services.

(4) The amount involved in the proceeding.

(5) The time limitations imposed by the circumstances.

(6) For a party represented by an attorney who is a full-time, salaried employee of the party, consideration also shall be given to the prorated cost of:

(A) the salary of the attorney and clerical or paralegal employees of the party who assisted the attorney; and

(B) their employee benefits attributable to the time devoted to representation.

\* \* \* \* \*

In *West Virginia Highlands Conservancy* ("WVHC"), the Fourth Circuit noted that, while the question of eligibility is a matter of law that could be determined by the trial court, the entitlement question was a factual question that was inappropriate for determination by the trial court on judicial review. *WVHC*, 343 F.3d at 248. In that case, the Department of the Interior's Interior Board of Land Appeals ("IBLA") denied WVHC's petition for attorney fees following the WVHC's prosecution of a citizen complaint under SMCRA. The IBLA denied WVHC's petition, but upon judicial review, the trial court reversed, finding that WVHC was eligible for fees under SMCRA and was entitled to them because WVHC had made a substantial contribution to the prosecution of the citizen complaint. On appeal, the Fourth Circuit affirmed the trial court's finding that WVHC was eligible for fees, but reversed the trial court on the entitlement issue, determining that the trial court improperly usurped the agency authority to make factual findings.

The procedural history of *WVHC* is similar to the history in the present case.

HEC contends, however, that because the special ALJ already made findings with respect to the entitlement issue, the trial court could properly determine the entitlement issue as a matter of law. We disagree.

The NRC is the "ultimate authority" of the DNR, subject to certain exceptions not applicable here. 312 I.A.C. 3–1–2. As such, the NRC may affirm, modify, or dissolve the non-final order of an administrative law judge. Ind.Code § 4–21.5–3–29. In this case, the NRC dissolved the special ALJ's non-final order and made its own findings and conclusions, ultimately deciding that HEC was not eligible for fees under Indiana Code Section 14–34–15–10, a decision the DNR now concedes as erroneous. Thus, the NRC never reached the issue of whether HEC is entitled to fees under ISMCRA. Rather than remanding the matter to the NRC, the trial court substituted its judgment for the NRC and essentially adopted the special ALJ's findings and conclusions. The trial court erred in so doing. *See* Ind.Code § 4–21.5–5–11; *see also* Ind.Code § 4–21.5–3–29 (reserving the decision to affirm, modify, or dissolve a non-final order of an ALJ to the ultimate authority).

Our supreme court discussed the principles of administrative law in *Medical Licensing Bd. of Ind. v. Provisor*, 669 N.E.2d 406 (1996). In that case, the supreme court determined that agency principles are founded in the constitutional doctrine of separation of powers:

As part of the judicial branch, a court has no authority to usurp or exercise the functions of an administrative agency during judicial review of the agency's order. A court may not substitute its judgment on the merits of an issue for that of an administrative body acting within its jurisdiction. The purpose of judicial review of an administrative order is "solely to determine whether or

not the body was outside the limits and jurisdiction of such body. Once the matter of jurisdiction is determined the court has no further right to interfere with an administrative procedure which belongs to another department of the government—not the judiciary."

*Provisor,* 669 N.E.2d at 408 (quoting *Enservco, Inc. v. Ind. Securities Div.,* 623 N.E.2d 416, 420 (Ind.1993)) (internal citations omitted).

■ We pay due deference to the interpretation of a statute by the administrative agency that is charged with its enforcement in light of its expertise in its given area. *Ballard v. Book Heating & Cooling, Inc.,* 696 N.E.2d 55, 56 (Ind.Ct.App.1998), *trans. denied.* However, we note that, as an issue of first impression, the NRC has not yet interpreted or applied this part of ISMCRA because it erred in finding the HEC was not eligible for an award of costs. Moreover, we note that the statute itself gives the NRC discretion in awarding costs and determining the amount of the award. *Williams v. City of Indianapolis Dep't of Pub. Works,* 558 N.E.2d 884, 887 (Ind.Ct.App.1990) (holding that "normally, the word 'may' in a statute implies a permissive condition."), *trans. denied; see also WVHC,* 343 F.3d at 249 (holding that the Board will "set the amount" of the award if it determined WVHC was entitled to costs). Accordingly, we reverse the trial court's order with respect to the entitlement issue and remand this matter to the NRC to conduct further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

FRIEDLANDER, J., and ROBB, J., concur.