# FOR PUBLICATION



FILED
Mar 14 2014, 9:04 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**JON LARAMORE**
**KEVIN M. KIMMERLING**
**KATRINA M. GOSSETT**
Faegre Baker Daniels LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STATE BOARD OF FUNERAL AND CEMETERY SERVICE, | ) | |
| | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No.  49A05-1307-PL-365 |
| | ) | |
| SETTLERS LIFE INSURANCE COMPANY, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable James B. Osborn, Judge
Cause No. 49D14-1212-PL-48790

**March 14, 2014**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

In this case, we consider whether the product sold by appellee-petitioner Settlers Life Insurance Company (Settlers), comprised of an insurance policy with an option to assign the policy to a trust that funds funeral and burial goods and services purchased after death, falls under the Pre-Need Act.[1]  Here, appellant-respondent, the State Board of Funeral and Cemetery Service (the Board), appeals the trial court's grant of Settlers's motion for summary judgment in which it determined that Settlers's insurance product did not fall within the statutory confines of the Pre-Need Act.  The Board argues that Settlers's product was intended to provide funding for the purchase of funeral services or merchandise, which is the same purpose the products regulated by the Pre-Need Act were intended to fulfill; the Board contends that all lawful funeral trusts must comply with the Pre-Need Act.  We find that Settler's product does not fall within the jurisdiction of the Pre-Need Act.  Therefore, the judgment of the trial court is affirmed.

## FACTS[2]

On June 18, 2009, Settlers sold Eva Hughes an insurance policy in the amount of $10,000, with benefits payable on proof of her death.  Settlers's product has two parts. The first part is the insurance policy with a $10,000 benefit payable on proof of death; the second part is an optional trust.  Those individuals who purchase Settlers's life insurance policy have the option to assign the policy irrevocably to a National Guardian Life Insurance Company (NGL) Trust.  If the insured does not assign the policy, he or she

---

[1] Ind. Code § 30-2-13-1 et seq.

[2] We heard oral argument on February 19, 2014, in the courtroom of the Indiana Court of Appeals in Indianapolis. We thank counsel for their informative and illustrative oral advocacy.

retains a standard life insurance policy, which means that, upon the death of the named insured, the beneficiaries of the policy may spend the proceeds for any purpose. However, if the insured decides to assign the policy to the irrevocable NGL Trust, the insurance proceeds cannot be used to pay for anything other than funeral expenses, and the proceeds may only be spent on the funeral and burial goods and services, such as embalming, casket, and funeral services as listed in the Trust.

As Hughes could not afford to pay for funeral services and merchandise, she decided to assign her insurance policy to the Trust. Along with her insurance policy application, Hughes signed an Irrevocable Assignment of Ownership. The NGL Trust was created by Settlers's parent company, National Guardian Life; it is administered by Merrill Lynch and governed by Wisconsin law. Settlers has sold this product, or a similar one, in over thirty states. In 2011, it issued about 100 policies in Indiana, six of which were irrevocably assigned to the NGL Trust.

After buying the policy, Hughes applied for Medicaid benefits in Pulaski County. The County Department of Family Resources (DFR) told her that she was ineligible for benefits because her Settlers policy disqualified her. The DFR excludes eligible funeral trusts from consideration of assets when determining Medicaid eligibility, but only when a funeral trust meets certain requirements. Hughes's policy was not owned by a funeral home, which is a requirement, and so it was considered a $10,000 asset. Hughes was told that she would remain ineligible for Medicaid unless she transferred ownership of her policy to a funeral home. Accordingly, Hughes went to Frain Mortuary, where Jon Frain

3

was employed as the funeral director, to effect a transfer. Frain contacted Settlers, who initially explained that the policy could not be transferred because Hughes did not have the right to do so, as she had chosen to assign the policy to an irrevocable trust.

The Pulaski County DFR determined that the assignment of the policy would not qualify as an excluded resource under Medicaid. Louise Taylor, a consultant in the Medicaid Eligibility Unit, provided a Policy Answer Line review determining whether the Trust was a valid funeral trust under Wisconsin law. Taylor wrote that "[u]nder Wisconsin law, a Life Insurance Funded Burial Contract is valid only when, among other items, it is assigned to a 'funeral director or operator of a funeral establishment'" and concluded that the "Trust is not a valid Funeral Expense trust under Wisconsin law." Appellant's App. p. 27. Settlers, while it does not believe the DFR reached the correct determination, transferred Hughes's policy from the trust to Frain Mortuary in Winamac to ensure Hughes would be eligible for Medicaid.[3]

While the DFR was working to determine Hughes's Medicaid eligibility, Frain filed a complaint with the Department of Insurance, stating his concerns that, in selling its product, Settlers was in violation of the Pre-Need Act. At first, the Department of Insurance rejected Frain's complaint. However, after further contact from Frain suggesting Settlers was in violation of the Act, the Department of Insurance sent Frain's complaint to the Office of the Attorney General.

---

[3] This Court makes no determination as to whether the Pulaski County DFR was correct in its decision to exclude the policy as a resource under Medicaid.

After receiving Frain's complaint, the Office of the Attorney General filed a motion to cease and desist with the State Board of Funeral and Cemetery Service (the Board), alleging that Settlers's product was governed by the Pre-Need Act and that Settlers lacked a certificate of authority to sell pre-need insurance under the Act. On December 14, 2012, the Board, after an administrative hearing, issued a cease and desist order, determining that Settlers was selling "insurance policies that are simultaneously assigned into irrevocable funeral trusts which restrict dispersal of trust funds to funeral expenses designated as pre-paid services or merchandise by Ind. Code § 30-2-13-8" without the certificate of authority required by Indiana Code section 30-2-13-33. Appellant's App. p. 59.

Settlers filed a petition for judicial review and declaratory relief, asking the trial court to overturn the Board's ruling and arguing that the Board's order conflicted with the statutory language in the Pre-Need Act. Settlers also asked that the trial court issue a declaratory judgment determining that the Pre-Need Act does not apply to products like the one Settlers sold to Hughes. Both Settlers and the State filed motions for summary judgment. On June 24, 2013, the trial court held a hearing, during which it heard the parties' oral arguments, and on June 26, 2013, the trial court granted Settlers's motion for summary judgment. The trial court also issued a declaratory judgment, stating that:

> The Pre-Need Act does not apply to contracts or assignments which restrict life insurance policy payments to funeral and burial goods or services to be selected after the death of the named insured, but which do not specify particular funeral and burial goods or services.

5

Id. at 72.

The Board now appeals.

DISCUSSION AND DECISION

I. Standard of Review

When reviewing a decision of an administrative agency, we apply the same standard as the trial court. Ind. Dept. of Natural Res. v. Hoosier Envtl. Council, Inc., 831 N.E.2d 804, 808 (Ind. Ct. App. 2005). We will reverse the Board's order only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege or immunity; (3) in excess of statutory jurisdiction, authority, or limitation, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." Id. at 809; Ind. Code § 4-21.5-5-14(d)(1)-(5). The burden of demonstrating the invalidity of an action is on the party challenging its validity. Ind. Code § 4-21.5-5-14(a).

While an interpretation of statutes and regulations by the administrative agency charged with enforcing those statutes and regulations is entitled to great weight, Ind. Dept. of Envtl. Mgmt. v. Steel Dynamics Inc., 894 N.E.2d 271, 274 (Ind. Ct. App. 2008), this Court does not owe such deference to an agency decision that is outside the scope of its jurisdiction.

II. Settlers's Product and the Pre-Need Act

The Board argues that the trial court erred when it granted summary judgment in favor of Settlers and contends that the product Settlers sells is indeed governed by the

6

Pre-Need Act.  The Board further maintains that pre-paid funeral trusts in Indiana must comply with the Pre-Need Act or its predecessors, arguing that Settlers's product is indicated in the Act's statutory language that reads "any written agreement between a purchaser and a seller that obligates the seller to provide prepaid services or merchandise, or both, in conjunction with the death, funeral, burial, or final disposition of the individual."  Ind. Code § 30-2-13-1.  Upon examining the plain language of the statute, we must disagree.

The plain language of the Pre-Need Act supports Settlers's argument that its at-need product is not covered by the act.  Indiana Code section 30-2-13-1(a), which outlines the applicability of the Pre-Need Act, states:

> Except as provided in subsection (b), this chapter applied to any written agreement between a purchaser and a seller that obligates the seller to provide prepaid services or merchandise, or both, for a named individual in conjunction with the death, funeral, burial, or final disposition of the individual.

There are several ways in which Settlers's product does not fall under the statute.  First, Settlers product does not "obligate the seller to provide pre-paid services or merchandise."  Ind. Code § 30-2-13-1(a).  Instead, Settlers's product pays a death benefit to the insured's survivors with the restriction that, if the insured chooses to transfer the policy to the NGL Trust, the money may only be used for funeral and burial expenses purchased after the insured's death.

Second, Settlers is not a "seller" as defined by the Pre-Need Act.  Under the Pre-Need Act, a "seller" is "[a] person doing business as a sole proprietor, a firm, a limited

7

liability company, a corporation, an associate, or a partnership contracting to provide services or merchandise, or both." I.C. § 30-2-13-10. Because Settlers does not contract to provide services or merchandise, but simply pays a death benefit, it is not a seller as contemplated by the statute.

Finally, Settlers's product is not designed to cover pre-need purchases, but rather to provide for at-need services and merchandise to be purchased after the insured dies. The definition of pre-paid services under Indiana Code section 30-2-13-8, goods "purchased in <u>advance of</u> need to be provided or delivered after death of the purchaser," necessarily excludes its product, which is to be used to purchase goods after the death of the insured. (emphasis added). In other words, Settlers's product, which is paid out <u>at the time of death</u> and does not require the insured to specify which goods and services are to be purchased with the proceeds of the policy, cannot be within the scope of an act that covers "pre-need" services. The trial court agreed with this contention when it granted summary judgment in favor of Settlers, determining that "contracts or assignments which restrict life insurance policy payments to funeral and burial goods or services to be selected after the death of the named insured, but which do not specify particular funeral and burial goods or services" are not within the scope of the Pre-Need Act. Appellant's App. p. 72.

The Board also argues that Settlers's product, unlike products that conform to the Pre-Need Act, does not meet the needs of consumers who wish to prepay their funeral expenses. Under the Pre-Need Act, a person who wishes to prepay funeral expenses

8

through a funeral trust must do so through a funeral home. Ind. Code § 30-2-13-10; I.C. § 30-2-12.5(c)(2). If an individual enters into a contract with a funeral home, the contract is required to specify the source of funding, describe the services and merchandise to be purchased, and contain the seller's certificate of authority. I.C. § 30-2-13-12.5(b).

While we agree that Settlers's product may not meet the needs of those who wish to prepay their funeral expenses, it is because we find that Settlers sells a product that fulfills a different purpose than pre-need products. It is not a product for those who wish to pre-purchase their funeral services; it is a product that is meant to provide funds to purchase funeral expenses on an at-need basis. In outlining the advantages of its products, Settlers highlights that: 1) its product can be used at any funeral home, so a purchaser who is uncertain at the time of purchase where he or she wants to be buried obtains flexibility by purchasing the product; 2) its product can be used for any funeral or burial services or product, which is an advantage for an individual who is not sure whether he or she would like to be buried or cremated; 3) it would allow those individuals who wish to allow their survivors to choose which goods and services to purchase to do so. We agree with Settlers's argument that some consumers may prefer its product for the above reasons.

In sum, we find that because Settlers sells an at-need product that fulfills different needs than a pre-need product, the trial court correctly granted summary judgment in its favor when it determined that at-need contracts and services do not fall within the scope of the Pre-Need Act.

9

The judgment of the trial court is affirmed.

NAJAM, J., and CRONE, J., concur.

10