**ROGERS GROUP, INC.,**
**Appellant–Plaintiff,**

v.

**DIAMOND BUILDERS, LLC, Spina Food Group, LLC, Victor A. Spina and William Spina, Appellees–Defendants.**

**No. 55A05–0401–CV–1.**

Court of Appeals of Indiana.

Oct. 7, 2004.

Daniel M. Mills, Bloomington, IN, Attorney for Appellant.

Peter R. Foley, Foley Foley & Peden, Martinsville, IN, Attorney for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff Rogers Group, Inc. ("Rogers") appeals from a judgment entered in favor of Appellees–Defendants Diamond Builders, LLC, Spina Food Group LLC, and Victor and William Spina (collectively "Diamond"). We reverse and remand.[1]

### Issues

Rogers raises three issues, which we consolidate and restate as the following two issues:

I. Whether the trial court's award of damages on Diamond's counterclaim is clearly erroneous; and

II. Whether the trial court erred in failing to award attorney fees and interest to Rogers.

### Facts and Procedural History

In 2001, Diamond was in the process of constructing a new Damon's restaurant located in Martinsville, Indiana. Diamond hired Drapalik Surveying and Engineering to design the parking lot for the restaurant, and Stafford Construction to build the sub-base for the parking lot, which covered approximately 50,000 square feet. Diamond contracted with Rogers to pave a parking lot for $63,045.00. The contract with Rogers provided, in pertinent part:

It is further understood that [Rogers] shall not be responsible for any damage or deterioration of any of its work, whether completed or in process, resulting from any cause or causes beyond

[Rogers'] control, including, but not limited to failure of sub-grade or failure or inadequacy due to the work of others, whether or not such failure or inadequacy was or could have been known at the time [Rogers'] Work was undertaken.

App. 216. The contract also provided that payment was due within fifteen days of completion of the work and that Diamond was liable for attorney fees incurred due to any breach of contract. Rogers offered a one-year warranty on the paving.

Rogers performed the paving work in July of 2001, and submitted its invoice for payment in September of 2001. Diamond did not pay the invoice, and on February 21, 2002, Rogers filed a complaint against Diamond to recover the payment due. On February 25, 2002, Rogers and Diamond agreed to suspend the litigation and allow Diamond to pay the amount owing over five months, plus any legal fees. Diamond paid Rogers $53,000.00, but refused to pay the final payment of $8,369.49 plus interest and attorney fees.

That spring, Diamond began complaining about the workmanship of the parking lot, noting several areas that would puddle and drain slowly after rains, and a separate area where a heavy vehicle rutted the asphalt surface. In July of 2002, Rogers repaired several areas by placing additional asphalt in the low spots. Diamond was dissatisfied with the patching work and contacted Wallace Construction, another paving contractor, to provide an estimate to repair the parking lot. Wallace estimated repairs would cost $15,521.00, which included milling approximately 200 linear feet of pavement and repaving and restriping the entire parking lot. On August 27, 2002, Diamond filed a counterclaim against

---

1. We hereby deny Rogers' request for oral argument.

Rogers seeking damages to repair the parking lot.

On July 8, 2003, the trial court conducted a bench trial on Rogers' complaint and Diamond's counterclaim. The trial court entered the following conclusions of law:

The Court finds that the plaintiff's claim for debt with interest and attorney fees is appropriate. Neither party has directed the Court to any case law concerning set-offs that would toll or reduce attorney fees and interest further than the Court has already done in its findings. That the plaintiff owes the defendant under the contract. That the plaintiff is liable to the counter-plaintiff for defective workmanship. That the only remedy is to redo the parking lot. The only appropriate way to do that is to entirely mill-off and resurface the parking lot according to Wallace Construction's bid.

App. at 15.

The trial court entered judgment for Rogers in the amount of $21,217.97 on Rogers' complaint, which included $7,504.80 in attorney fees and $5,343.68 in prejudgment interest, and entered judgment for Diamond in the amount of $15,521.00 on Diamond's counterclaim. Diamond filed a motion to correct error, which the trial court granted, finding that Rogers was not entitled to attorney fees and interest because Diamond's counterclaim exceeded Rogers' principal recovery under the contract. The trial court entered a revised judgment in favor of Diamond for $7,152.00. Rogers now appeals.

## Discussion and Decision

### A. Standard of Review

When a party has requested specific findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings. *Mitchell v. Mitchell*, 695 N.E.2d 920, 923 (Ind.1998). In reviewing the judgment, we must determine, first, whether the evidence supports the findings and, second, whether the findings support the judgment. *Ahuja v. Lynco Ltd. Med. Research*, 675 N.E.2d 704, 707 (Ind.Ct.App. 1996), *trans. denied*. The judgment will be reversed only when clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.* A judgment is clearly erroneous if our examination of the record leaves us with the firm conviction that a mistake has been made. *Owensby v. Lepper*, 666 N.E.2d 1251, 1256 (Ind.Ct.App. 1996), *reh'g denied*.

### B. Analysis

#### 1. Judgment on Counterclaim

Rogers makes a twofold argument that the trial court's order was clearly erroneous. First, Rogers contends that the trial court erred in finding in Diamond's favor on the counterclaim. Second, Rogers argues that the trial court's conclusion that the "only remedy is to redo the parking lot" was not supported by the findings. We address each argument in turn.

Rogers asserts that all the experts agreed that the parking lot was well built. In fact, Richard Wallace, Diamond's expert witness, testified that he does not guarantee puddle-free parking lots on his own work, and that puddles less than one-eighth inch deep do not need to be repaired. No evidence in the record estab-

lishes the water depth in the photographic exhibits.

However, according to Rogers' own expert witness, Jerry Barnes, there was no indication that these depressions in the parking lot were due to sub-base failure. This revelation dispelled Rogers' contention that the depressions were due to sub-base failure and therefore beyond its responsibility. Barnes also testified that paving contractors typically check and adjust the grade on paving projects to insure that the pavement drains properly. In fact, Rogers did "fine grade" the existing sub-base, and paving contractors typically have an obligation to insure that a paving project has adequate drainage even if they are not responsible for the sub-base.

Rogers did repair several areas in the parking lot in July of 2002, by adding additional asphalt to fill in the existing depressions. Rogers used half-inch aggregate on top of the existing asphalt. Gary Barrow, construction manager for Rogers, admitted that he "wasn't very proud of the patch job" because it detracted visually from the new parking lot. Tr. at 120. The parking lot at Damon's was visible from the nearby highway, and the attractiveness of the outside features of the restaurant, including the parking lot, was important to bring in business.

From our review of the record, we conclude that the evidence and the reasonable inferences that can be drawn therefrom support the decision of the trial court. Specifically, the trial court could have reasonably found that the depressions repaired by Rogers exceeded a depth of one-eighth inch, and that some of the repairs

were unattractive and needed to be redone, even if they were structurally sound.[2] Accordingly, the conclusion that Rogers is liable to Diamond on its counterclaim is supported by the evidence.

■ However, with respect to Rogers' argument that the trial court erred in finding that the repaving the parking lot was the *only* remedy, we agree with Rogers that the evidence did not support this conclusion.

Wallace, who provided the bid to repave the parking lot, testified that repaving the lot was not necessary. Wallace testified that as one possible remedy, "You can mill out around the area that is holding water and put a new surface course in there to take a depression out and then tie it all in ... flush." Tr. at 43. According to Wallace:

> [the parking lot] can be repaired ... uh ... in a fashion that it really wouldn't stick out like a patchwork job.... [M]ost of the depressed areas are around the outside edges and parking areas, except where the drain is. In my opinion they can be milled out where the parking areas are ... milled out to a point to still maintain positive drainage and overlaid in those areas.

Tr. at 55.[3]

This testimony indicates that repaving the entire lot was not the only option that would remedy the puddling and prior patching. On remand, the trial court should conduct further proceedings to determine the cost to repair only the areas Wallace estimated needed to be milled.

**2.** At trial, Rogers' employees testified that William Spina indicated that he would have the parking lot seal-coated, and thus did not care about the appearance of the patching. Spina denied that Rogers offered any options on the type of repair.

**3.** On questioning by the trial court, Wallace indicated that he did not have the measurements and thus, could not estimate the cost for repaving only those areas that would be milled, which, according to his estimate, totaled 200 linear feet.

### 2. Attorney Fees and Prejudgment Interest

Rogers also argues that the trial court erred in failing to award attorney fees and interest pursuant to the paving contract and subsequent settlement agreement to suspend the litigation.

Generally, Indiana follows the American Rule, which requires each party to pay his or her own attorney fees. *Willie's Constr. Co. v. Baker*, 596 N.E.2d 958, 963 (Ind.Ct.App.1992), *trans. denied.* However, parties may shift the obligation to pay attorney fees through contract or agreement, and courts will enforce such agreements as long as they are not contrary to law or public policy. *Id.*

A provision for payment of attorney fees is against public policy when the opposing party successfully asserts a counterclaim resulting in a judgment exceeding the judgment awarded to the other party. *Id.* When a party successfully asserts a contract claim against another, and the contract calls for the payment of attorney fees, an award of attorney fees should be reduced by a proportionate amount between the recovery under the contract and the recovery on the counterclaim. *Id.* (citing *Burras v. Canal Constr. and Design Co.*, 470 N.E.2d 1362, 1370 (Ind.Ct.App. 1984)).

In *Willie's Construction*, the Bakers owed Willie's Construction approximately $13,000 for construction of a new house. However, the Bakers claimed that Willie's Construction breached the construction contract by failing to build a basement to the depth set forth in the contract. The trial court awarded the Bakers $24,000 in damages caused by Willie's Construction's breach of contract, but also awarded Willie's Construction the $13,000 owed on the contract, plus attorney fees and interest. This Court reversed the trial court's award of attorney fees and interest because the Baker's recovery on its counterclaim exceeded the amount of the contract claim.

Here, at the time Rogers filed its complaint, Diamond owed the entire $63,045.00 for the paving work. However, days after filing the complaint, Rogers and Diamond agreed to suspend the litigation as long as Diamond made a series of payments to Rogers in order to pay off the amount owed. After making the first three payments, Diamond failed to pay the remainder, and Rogers reinstituted the litigation. Thus, while at the time the trial court entered judgment, Diamond only owed Rogers $8,369.49 in principal, Rogers had already received post-complaint payments totaling $53,000, a key fact that distinguishes this case from *Willie's Construction*. Accordingly, Diamond's recovery from its counterclaim did not exceed Rogers' recovery under the contract, and the trial court erred in failing to enforce the terms of the contract and settlement agreement.

### III. Conclusion

For the foregoing reasons, the evidence does not support the trial court's finding that "the only remedy is to redo the parking lot," and thus, its conclusion that Diamond should recover damages for repaving the entire parking lot is clearly erroneous. Further, the trial court erred by failing to award Rogers its attorney fees and interest. We remand to the trial court to conduct further proceedings consistent with this opinion.

Reversed and remanded.

SHARPNACK, J., and MAY, J., concur.