Phillip STEWART and Judith Stewart, Appellants–Respondents,

v.

TT COMMERCIAL ONE, LLC, Thompson Thrift, Inc., and Omer J. Stocker, Jr., Appellees–Petitioners.

No. 29A05–0902–CV–00105.

Court of Appeals of Indiana.

Aug. 10, 2009.

---

David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, Michael J. Sobieray, Carmel, IN, Attorneys for Appellants.

Jeffrey Kosc, Raegan Gibson, Dann Pecar Newman & Kleiman, P.C., Indianapolis, IN, Attorneys for Appellees.

## OPINION

BROWN, Judge.

Phillip Stewart and Judith Stewart (collectively, the "Stewarts") appeal the trial court's grant of summary judgment to TT Commercial One, LLC ("Commercial One"), Thompson Thrift Development, Inc. ("Thompson Thrift"), and Omer J. Stocker, Jr. (collectively, the "TTCO Parties").

The Stewarts raise several issues, which we revise and restate as:

I. Whether the trial court erred by granting summary judgment to the TTCO Parties; and

II. Whether the trial court erred by ordering the Stewarts to pay attorney fees incurred by the TTCO Parties.

We affirm in part, reverse in part, and remand.[1]

The relevant facts designated by the parties follow. The Stewarts, as landlord, and Thompson Thrift, as tenant, entered into a Ground Lease dated September 1, 2000 for the lease of three parcels of real property located at 821, 831, and 841 Rangeline Road, in Carmel, Indiana. The Stewarts negotiated the terms of the Ground Lease with Stocker, an employee of Thompson Thrift. Thompson Thrift, Commercial One, and the Stewarts executed an Assignment and Assumption of Lease dated November 21, 2000, pursuant to which Commercial One assumed and agreed to perform all of the obligations of Thompson Thrift under the Ground Lease (the Ground Lease and the Assignment and Assumption of Lease, collectively, the "Lease").

Under Section 4.1 of the Lease, rent for the first five years of the lease term was $48,000.00 per year, payable in equal monthly installments of $4,000.00 per month. On the sixty-first month of the lease term, rent was to increase pursuant to Section 4.1 by "the greater of (i) a percentage which . . . shall be ten percent

(10%), and (ii) the Percentage CPI Increase." Appellant's Appendix at 84. However, the Percentage CPI Increase was not to exceed twenty percent. Subsection (v) of Section 4.1 of the Lease provided:

(v) The "Percentage CPI Increase" shall mean the increase in the Index which has occurred between the Base CPI Month and the Comparison Date, provided the increase does not exceed the Percentage Increase Cap. In the event the Index has decreased, the Percentage CPI Increase shall be zero.

Appellant's Appendix at 85. The "Index" under the Lease was defined as "the United States Department of Labor, Bureau of Labor Statistics, Consumer Price Index for all Urban Consumers (on the basis 1982–1984 = 100)." Id. The relevant "Base CPI Month" here was March of 2001, and the "Comparison Date" was March of 2006. Id. at 42, 239–240 The "Percentage Increase Cap" was defined as twenty percent. Id. at 85.

The Index was 176.2 on March 1, 2001 (the relevant Base CPI Month), and the Index was 199.8 on March 1, 2006 (the relevant Comparison Date). Thus, the Index increased 23.6 points during that period of time. The Index's increase of 23.6 points reflects a 13.39% increase over the five-year period of time.

As a part of its calculations to determine its rent adjustment in 2006, Commercial One initially used the figure of 23.6, which represented the increase in the points of the Index over the relevant five-year period. Specifically, because the figure of 23.6

---

1. The trial court entered summary judgment in favor of the TTCO Parties and against the Stewarts "on all claims," including "on the Stewarts' cross-claim" alleging fraud. Appellant's Appendix at 8–9, 388. The Stewarts did not make any arguments with respect to its cross-claim for fraud in its brief in response to the TTCO Parties' summary judg-

ment motion and in support of the Stewarts' motion for summary judgment. The Stewarts do not argue on appeal that the trial court erred by granting the TTCO Parties' motion for summary judgment with respect to the Stewarts' cross-claim for fraud. Therefore, we need not address this issue.

was greater than the Percentage Increase Cap (twenty percent), Commercial One determined that the Percentage CPI Increase which should be used to calculate its adjusted rent was twenty percent. Accordingly, Commercial One began making rent payments to the Stewarts in the amount of $4,800 per month (a twenty-percent increase in the original rent of $4,000).

Commercial One became aware during its refinancing process that it had used the figure of 23.6 in its calculations to determine the adjustment to its rent payments. On December 5, 2006, Thompson Thrift, the predecessor of Commercial One, notified the Stewarts that the rent had been calculated incorrectly, and that the incorrect adjustment had resulted in an overpayment of rent to the Stewarts. Specifically, Thompson Thrift's letter explained that it had mistakenly used the figure of 23.6 (the number of points the Index increased during the relevant five-year period) instead of the percentage 13.39% (the increase in the Index over the same period), and that Commercial One's monthly rent installments should have been $4,535.75 per month (a 13.39% increase in the original rent of $4,000), not $4,800.00 per month. Commercial One reduced its rent payment for December 2006 by $792.75 in order to recoup the previously overpaid rent of $264.25 per month for three months.

On January 3, 2007, the Stewarts notified Thompson Thrift that it had failed to pay the full amount of rent due on December 1, 2006, and that the Stewarts intended to terminate the Lease unless they received payment in full. As a consequence, while it reserved the right to pursue any overpayments, Commercial One paid the Stewarts the balance the Stewarts claimed was due and continued to pay the Stewarts $4,800 per month.

On March 12, 2007, Commercial One filed a complaint to recover any rent overpayments, obtain reasonable attorneys fees and costs, and obtain declaratory relief. On May 25, 2007, the Stewarts filed their answer and cross-claim against Thompson Thrift and Stocker denying Commercial One's substantive allegations and alleging that Stocker committed fraud by representing to the Stewarts that the numeric increase in the points of the Index, and not the percentage increase of the Index, would be used to calculate the rent increases under the Lease. In June 2007, Thompson Thrift and Stocker filed a motion to dismiss the Stewarts' cross-claim, and the trial court denied their motion to dismiss on September 18, 2007. On November 27, 2007, the TTCO Parties filed their answer to the Stewarts' cross-claim denying the Stewarts' substantive allegations.

In September 2008, the TTCO Parties filed a motion for summary judgment on all claims, including the Stewarts' cross-claim. On October 16, 2008, the Stewarts filed a response to the TTCO Parties' summary judgment motion and filed a motion for summary judgment. On October 27, 2008, the Stewarts filed a motion to strike certain portions of Stocker's affidavit. On November 3, 2008, the TTCO Parties filed a motion opposing the Stewarts' motion to strike. On December 10, 2008, the trial court denied the Stewarts' motion to strike portions of Stocker's affidavit. After a hearing, the trial court granted the TTCO Parties' motion for summary judgment on its complaint and on the Stewarts' cross-claim on December 24, 2008. On January 29, 2009, the trial court entered final judgment in favor of the TTCO Parties. Specifically, the trial court: (1) found that the TTCO Parties were entitled to damages against the Stewarts for the amount of Commercial One's aggregate overpayment

of rent in the amount of $7,663.25; (2) awarded the TTCO Parties attorney fees and costs associated with the TTCO Parties' action to enforce the Lease; and (3) declared that future rent increases under the Lease were "to be calculated by using the percentage increase in the CPI and not by the raw increase in such index." Appellant's Appendix at 3.

## I.

■ The first issue is whether the trial court erred by granting summary judgment to the TTCO Parties. Our standard of review for a trial court's grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974.

The fact that the parties made cross-motions for summary judgment does not alter our standard of review. *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind.Ct.App.1997), *trans. denied.* Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.* Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of

our review. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

The Stewarts argue that the trial court erred when interpreting the rent provisions of the Lease. Indiana courts have recognized the contractual nature of leases and the applicability of the law of contracts to leases. *Village Commons, LLC v. Marion County Prosecutor's Office*, 882 N.E.2d 210, 215 (Ind.Ct.App.2008) (interpreting default section of lease provision), *reh'g denied, trans. denied; see also Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1129 (Ind.1995) (noting that a real estate lease is subject to principles of contract law); *Chicago Southshore & South Bend R.R. v. Itel Rail Corp.*, 658 N.E.2d 624, 629 (Ind.Ct.App.1995) (interpreting provisions of lease); *Bicknell Minerals, Inc. v. Tilly*, 570 N.E.2d 1307, 1310 (Ind.Ct.App.1991) (interpreting provisions of a coal mining lease), *reh'g denied, trans. denied.*

■ The construction of a written contract is generally a question of law for the court, making summary judgment particularly appropriate in contract disputes. *City of Lawrenceburg v. Milestone Contractors, L.P.*, 809 N.E.2d 879, 883 (Ind.Ct.App.2004), *trans. denied.* Interpretation of a contract presents a question of law and is reviewed *de novo. Bailey v. Mann*, 895 N.E.2d 1215, 1217 (Ind.2008). When a trial court has entered summary judgment in a contract dispute, it has determined either that: 1) the contract is not ambiguous or uncertain as a matter of law and the trial court need only apply the terms of the contract; or 2) the contract is ambiguous, but the ambiguity may be resolved without the aid of factual determinations. *Bicknell*

*Minerals, Inc.,* 570 N.E.2d at 1310–1311 (citations omitted). A contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms. *Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 528 (Ind.2002), *reh'g denied; Fackler v. Powell,* 891 N.E.2d 1091, 1096 (Ind.Ct.App.2008), *trans. denied.* A contract is not ambiguous merely because the parties disagree as to its proper construction. *Ethyl Corp. v. Forcum–Lannom Assocs., Inc.,* 433 N.E.2d 1214, 1217 (Ind.Ct. App.1982).

■ When interpreting a contract, our paramount goal is to ascertain and effectuate the intent of the parties. *Village Commons, LLC,* 882 N.E.2d at 215; *see also Ethyl Corp.,* 433 N.E.2d at 1217 (noting that when this court interprets an unambiguous contract, we give effect to the intentions of the parties as expressed in the four corners of the instrument); *Fetz v. Phillips,* 591 N.E.2d 644, 647 (Ind.Ct. App.1992) (noting that clear, plain, and unambiguous terms are conclusive of the intentions of the parties as expressed in the four corners of a contract). This requires the contract to be read as a whole, and the language construed so as not to render any words, phrases, or terms ineffective or meaningless. *Village Commons, LLC,* 882 N.E.2d at 215; *see also Kelly v. Smith,* 611 N.E.2d 118, 121 (Ind.1993) (noting that "[t]he court, in interpreting an agreement, is under an obligation to read the agreement in a manner which harmonizes its provisions as a whole and to give effect to the parties' expressed intent").

The Stewarts argue that the trial court erred when it determined that Section 4.1 of the Lease provided that rent adjustments be based upon the percentage increase in the Index. Specifically, the

Stewarts argue that, "by granting summary judgment, the trial court improperly altered the rent escalation clause from one which treated the increase in the CPI as the percentage increase, to one which used the percentage increase as the basis for the rent increase." Appellant's Brief at 14. On the other hand, the TTCO Parties argue that the trial court did not commit error because Section 4.1 of the Lease was clear and unambiguous regarding the manner in which adjustments to rent were to be calculated. We agree that the rent provisions in the Lease are unambiguous.

Section 4.1(v) of the Lease provides:

(v) The "Percentage CPI Increase" shall mean the increase in the Index which has occurred between the Base CPI Month and the Comparison Date, provided the increase does not exceed the Percentage Increase Cap.[2] In the event the Index has decreased, the Percentage CPI Increase shall be zero.

Appellant's Appendix at 85. The Stewarts observe that the definition above does not include the word "percentage" to qualify the phrase "increase in the Index." *See* Appellant's Br. at 12; Appellant's Appendix at 85. Specifically, the Stewarts state: "The agreement defines the percentage increase in the CPI as the increase between the base figure and the figure on the 5th anniversary date of the lease. It does not define the percentage CPI increase as the percentage increase between the base CPI month and the anniversary CPI index." Appellant's Brief at 12. However, as the TTCO Parties point out, subsection (v) characterizes the relevant increase as the "*Percentage* CPI Increase." Appellee's Brief at 12 (emphasis in brief).

2. Subsection (vi) of the Lease provides: "The 'Percentage Increase Cap' shall be twenty percent (20%)." Appellant's Appendix at 85.

In addition, reading the Lease in a manner which harmonizes its provisions as a whole and which does not render any words or phrases ineffective, we observe that the increase in the Index is referred to as a percent or as a percentage in several clauses of the Lease. For instance, the third paragraph of Section 4.1 provides that "Rent shall be increased . . . by the greater of (i) a percentage which, for the first thirty (30) years of this Lease shall be ten percent (10%) . . . and (ii) the Percentage CPI Increase." Appellant's Appendix at 84. If we were to interpret the term "Percentage CPI Increase" to mean the increase in the points of the Index as the Stewarts suggest, and substitute that definition in the sentence setting forth the rent calculation, the result would read as follows: "Rent shall be increased . . . by the greater of (i) a percentage which . . . shall be ten percent (10%) . . . and (ii) [*the increase in the points of the Index from the Base CPI Month to the Comparison Date* ]." *See id.* at 84–85 (emphasized portion represents the replacement of the term "Percentage CPI Increase" with the Stewarts' desired interpretation of that term). More specifically, for the rent calculation at issue here, the rent increase would be determined as follows: "Rent shall be increased . . . by the greater of (i) . . . ten percent (10%) . . . and (ii) [*23 points* ]." *See id.* (emphasized portion represents the replacement of the term "Percentage CPI Increase" with the increase in the points of the Index from March, 2001 to March, 2006, as the Stewarts suggest). The Stewarts do not explain in their brief, nor do any of the designated materials show, how the rent of $4,000.00 could be increased by "23 points." Nor do the Stewarts explain how "23 points" is the same as "23 percent."

The third paragraph of Section 4.1 also includes the following sentence: "The Per-centage CPI Increase shall not exceed the Percentage Increase Cap." *Id.* Again, if we were to replace the defined terms in this sentence with the definitions which the Stewarts suggest, where the term "Percentage CPI Increase" means the increase in the points of the Index and the term "Percentage Increase Cap" means twenty percent (as defined in the Lease), then this sentence would read: *"[The increase in the points of the Index]* shall not exceed [twenty percent]." *See id.* (emphasized portion represents the Stewarts' suggested interpretation of the term "Percentage CPI Increase"). It is not clear how this statement should be construed or how it would be applied. Similarly, the third line of subsection (v) of Section 4.1 also provides that the "Percentage CPI Increase" may not "exceed the Percentage Increase Cap." Appellant's Appendix at 85. As mentioned above, the Percentage Increase Cap is defined as a specified percentage (specifically, "twenty percent"). We cannot say that the Stewarts' interpretation of the term "Percentage CPI Increase" helps to "harmonize" the various clauses of Section 4.1 of the Lease. Indeed, the references in each of the Lease clauses discussed above to the term "Percentage CPI Increase," and thus to the increase in the Index, as a "percentage" reveal the parties' intent that the percentage increase in the Index be used to calculate rent under the Lease.

In addition, Section 4.1(i) of the Lease provides that the term "Index" shall mean either (1) "the Consumer Price Index for all Urban Consumers (on the basis 1982–1984 = 100)" as published by the United States Department of Labor, Bureau of Labor Statistics (the "CPI"); *or* (2) if the format or components of the CPI are materially changed after the execution of the Lease, a substitute index "published by Bureau of Labor Statistics or similar agen-

cy and which has been determined by independent third party sources to be comparable to the [CPI] in effect on the date of this Lease." Appellant's Appendix at 85. Interpreting subsection (v) in a manner which harmonizes its terms with the provisions of subsection (i) of the same Lease section further reveals that the parties intended for the percentage change in the Index to be used to calculate rent under the Lease, whether the Index is defined as the CPI or as a different substituted index at the time a particular rent calculation is made under the Lease.

We conclude that the Lease is unambiguous in that the parties intended for the percentage increase in the Index to be used to calculate rent increases under the Lease.[3] Therefore, the TTCO Parties were entitled to summary judgment, and the trial court did not err when it granted the TTCO Parties' motion for summary judgment.[4]

## II.

█ The next issue is whether the trial court erred by ordering the Stewarts to pay attorney fees incurred by the TTCO Parties. The Stewarts appear to argue that the TTCO Parties submitted insuffi-

cient evidence to support the trial court's award of attorney fees.

█ Generally, Indiana follows the American Rule, which requires each party to pay his or her own attorney fees. *Bruno v. Wells Fargo Bank, N.A.*, 850 N.E.2d 940, 950 (Ind.Ct.App.2006) (citing *Rogers Group, Inc. v. Diamond Builders, LLC*, 816 N.E.2d 415, 420 (Ind.Ct.App.2004), *trans. denied*). However, parties may shift the obligation to pay such fees through contract or agreement, and courts will enforce the agreements as long as they are not contrary to law or public policy. *Id.* We recognize that Section 9.3 of the Lease provides that the prevailing party shall be entitled to reasonable attorney fees and costs in connection with the enforcement of the Lease. However, even under a contract, an award of attorney fees must be reasonable. *Id.* (citing *Walton v. Claybridge Homeowners Ass'n*, 825 N.E.2d 818, 826 (Ind.Ct.App.2005)). The determination of reasonableness of attorney fees necessitates consideration of all relevant circumstances. *Id.* (citing *Boonville Convalescent Ctr., Inc. v. Cloverleaf Healthcare Servs., Inc.*, 834 N.E.2d 1116, 1127–1128 (Ind.Ct.App.2005), *reh'g denied, trans. denied*).

---

3. The designated evidence supports this conclusion. The designated evidence reveals that during lease negotiations, the Stewarts were concerned about inflation due to the length of the lease term, and the Stewarts proposed that rent increases be based upon the Index because they "felt like that the CPI index would provide for that inflation protection." Appellant's Appendix at 106. Phillip Stewart testified that he introduced the CPI as a concept to the ground lease as an inflationary measure. When discussing the provision providing for the substitution of another index, Phillip Stewart testified: "It [the substituted index] would need to be similar by being in some fashion tied to the rate of inflation." *Id.* at 127.

4. The Stewarts also argue that the trial court erred when it denied their motion to strike certain portions of Stacker's affidavit. However, we need not address this issue because we affirm the trial court's grant of the TTCO Parties' motion for summary judgment on other grounds. *See Catt v. Bd. of Comm'rs of Knox County*, 779 N.E.2d 1, 3 (Ind.2002) (in reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds the Indiana Trial Rule 56 materials support). Specifically, we observe that our interpretation of the Lease and our holding in this case are not based upon any portion of Stacker's affidavit which was included in the designated evidence.

We initially note that the amount of attorney fees awarded is not inconsequential. Where the amount of the fee is not inconsequential, there must be objective evidence of the nature of the legal services and the reasonableness of the fee. *Posey v. Lafayette Bank and Trust Co.,* 583 N.E.2d 149, 152 (Ind.Ct.App.1991) (citations omitted), *trans. denied.*

Here, the trial court found that the TTCO Parties were entitled to attorney fees and costs associated with the TTCO Parties' action to enforce the Lease. Specifically, based on an affidavit submitted by the TTCO Parties' attorneys, the trial court awarded the TTCO Parties $32,792.00 for attorney fees, $2,569.41 for costs, and an additional $1,000.00 in attorney fees to enforce the final judgment. In their brief, the Stewarts argue: "There was nothing before the trial court but figures of fees and costs stated in the affidavit [sic] There was no information about hours spent. There was no information about hourly rates. The only serves [sic] performed beyond the complaint was some discovery and summary judgment motions and responses." Appellant's Brief at 19.

With only the TTCO Parties' affidavit designated for our review, we agree with the Stewarts that the record lacks sufficient evidence to assist the trial court in determining a reasonable amount of attorney fees. The affidavit upon which the trial court based its award of attorney fees did not provide the trial court with the time expended or the rates charged by the TTCO Parties' attorneys. While the trial court may consider a number of factors in determining the reasonableness of attorney fees,[5] we have noted that "the hours worked and the rate charged are a common starting point for determining the reasonableness of a fee." *Fortner v. Farm Valley–Applewood Apartments,* 898 N.E.2d 393, 400 (Ind.Ct.App.2008), *reh'g denied.* Based upon the record, we cannot determine whether the attorney fees awarded by the trial court were reasonable. Therefore, we remand this issue to the trial court to determine the reasonableness of the fees requested and to award reasonable fees to the TTCO Parties. *See, e.g., Fortner,* 898 N.E.2d 393 at 400 (noting that the record did not "establish[ ] the number of hours that counsel ... spent on the case or the hourly rate that was charged," concluding the record was insufficient to determine the reasonableness of the requested fees, and remanding to the trial court to conduct a hearing to determine the reasonableness of the fees); *see also Loudermilk v. Casey,* 441 N.E.2d 1379, 1387–1388 (Ind.Ct.App. 1982) (where attorney's affidavit separately enumerated the number of hours, fees earned, and out-of-pocket expenses of the attorney's firm, the court noted that attor-

---

**5.** Rule 1.5(a) of the Indiana Rules of Professional Conduct provides in part: The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent. Ind. Rules of Prof. Conduct, Rule 1.5 (2005).

ney's affidavit did not specifically state what services his firm performed and concluded that "[w]ithout more information about the services provided by the attorneys and the customary charges for such services, the court cannot decide what charges are reasonable"); *U.S. Aircraft Fin., Inc. v. Jankovich,* 407 N.E.2d 287, 295–296 (Ind.Ct.App.1980) (remanding for a determination regarding whether attorney fees were reasonable, the court noted that "[w]hen counsel does not present evidence as to the hours expended in behalf of his or her client and perhaps out-of-pocket expenses, the risk is then taken that a subsequent award of attorney's fees may be considered . . . excessive since the record may not indicate any justification for the amount awarded.").

For the foregoing reasons, we affirm the trial court's grant of the TTCO Parties' motion for summary judgment on the TTCO Parties' complaint, and we reverse the trial court's order granting attorney fees to the TTCO Parties and remand to the trial court for a further hearing on the reasonableness of attorney fees.

Affirmed in part, reversed in part, and remanded.

CRONE, J., and BRADFORD, J., concur.