**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 07 2013, 5:33 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**SHAUN T. OLSEN**
Law Office of Weiss & Schmidgall, P.C.
Merrillville, Indiana

ATTORNEY FOR APPELLEE:

**BRADLEY J. ADAMSKY**
Newby, Lewis, Kaminski & Jones, LLP
LaPorte, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY TSIKOURIS, DIANN TSIKOURIS, and THE 601 BUILDING, INC., | ) ) ) | |
| Appellants, | ) ) | |
| vs. | ) ) | No.  46A05-1212-MF-659 |
| LAPORTE SAVINGS BANK, | ) ) | |
| Appellee. | ) | |

APPEAL FROM THE LAPORTE SUPERIOR COURT
The Honorable Kathleen B. Lang, Judge
Cause No. 46D01-1103-MF-42

**November 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Anthony Tsikouris, Diann Tsikouris, and The 601 Building, LLC (collectively, "the Tsikourises") appeal the trial court's denial of their motion to correct error, which challenged a grant of summary judgment in favor of LaPorte Savings Bank ("the Bank") on the Bank's mortgage foreclosure claim. The Tsikourises present the single issue of whether the trial abused its discretion in denying their motion to correct error because summary judgment in favor of the Bank was improvidently granted.

We affirm in part, reverse in part, and remand with instructions to calculate appropriate damages and determine reasonable attorney's fees.

**Facts and Procedural History**

On August 26, 2003, the Tsikourises executed a Note and Mortgage for $450,000.00 in connection with commercial real estate located at 601 Franklin Street, Michigan City, Indiana ("the Property"). The Note provides for 59 monthly payments of $3,228.14, beginning on October 1, 2003, to be increased after 59 payments based on a variable rate. Further, the Note includes the following provisions:

> . . .
>
> Time is of the essence in this agreement.
>
> . . .
> PAYMENTS: Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. . . .
>
> . . .

2

REAL ESTATE OR RESIDENCE SECURITY:  If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

DEFAULT:  I will be in default if any one or more of the following occur[:] (1) I fail to make a payment on time or in the amount due; . . . (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you[.]

REMEDIES:  If I am in default on this note you have, but are not limited to, the following remedies:

> (1)    You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
>
> . . .
> (5)    You may use any remedy you have under state or federal law.
>
> By selecting any one or more of these remedies you do not give up your right to later use any other remedy.  By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

COLLECTION COSTS AND ATTORNEY'S FEES:  I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default.  In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). . . .

. . .

OBLIGATIONS INDEPENDENT:  I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement).  You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note.  You may do so without any notice that it has not been paid (notice of dishonor). . . .

(App. at 17.)

3

The Mortgage includes the following provisions:

8.      CLAIMS AGAINST TITLE.   Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. . . .

. . .

15.     DEFAULT.  Mortgagor will be in default if any of the following occur:

A.      Any party obligated on the Secured Debt fails to make payment when due;

B.      A breach of any term or covenant in this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt;

. . .

E.      A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired[.]

. . .

16.     REMEDIES ON DEFAULT.  In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions.  Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default.  At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter.  In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents.  All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth.  The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default.  By not exercising any remedy on Mortgagor's default, Lender does not waive

4

Lender's right to later consider the event a default if it continues or happens again.

17. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS. Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

. . .

(App. at 19, 21.)

On March 14, 2011, the Bank filed a complaint on the Note against the Tsikourises, and requested foreclosure on the Mortgage. The Bank named as a defendant the LaPorte County Treasurer to answer as to any interest it held "by virtue of unpaid property taxes." (App. at 13.) On April 20, 2011, the Tsikourises filed their answer and affirmative defenses, demanding "strict proof" of the alleged delinquency. (App. at 26.) On November 11, 2011, the Bank filed a motion for summary judgment, which it later withdrew on January 30, 2012 after having received additional payments from the Tsikourises to cure the default.

At some point, due to alleged insecurity about timely receipt of payments from the Tsikourises, the Bank began to collect rental payments directly from some commercial tenants of the Property. On May 14, 2012, Bank filed a second motion for summary

5

judgment, claiming in its supporting memoranda that the Tsikourises had failed to pay property taxes pursuant to the terms of the note and mortgage. A supporting affidavit from a bank representative averred that, because the Bank had elected to accelerate all sums due under the Note, an unpaid balance of $318,259.57 was due and owing.[1] The Bank also sought late charges, interest, a filing fee of $226.00, a title work fee of $325.00, and $2,000.00 in attorney's fees. The affiant also claimed that real estate taxes for the Property were in arrears.

The trial court held a summary judgment hearing on September 28, 2012. At that time, the Bank's counsel represented to the trial court that there "may have been payments received" since the execution of the Bank's affidavit but nevertheless claimed that real estate taxes were delinquent.[2] (Tr. 4.) The Tsikourises argued that the Bank records were inadequate and did not reflect an actual deficiency in payments, and further objected to the $2,000 attorney's fees as duplicative of fees incurred upon filing the first motion for summary judgment. The Tsikourises made no claim, in designated materials or argument of counsel, that a genuine issue of material fact existed as to whether the real estate taxes were current.

On October 3, 2012, the trial court granted the Bank's motion for summary judgment,

---

[1] The October 2011 affidavit in support of the first motion for summary judgment stated that $354,330.42 was then due.

[2] There were two sources of payment. Some amounts were received directly from tenants. Also, the Tsikourises claimed that they had tendered payments for May, June, and July of 2012. The Bank's counsel claimed that over $6,000.00 (approximately equal to the August and September payments) was past due as of the time of the hearing and that another payment would be due in three days, for a projected delinquency of $9,590.94.

and entered a decree of foreclosure. The Bank was awarded a judgment of $318,259.57,

consisting of:

| | |
|---|---|
| Principal | $ 287,129.60 |
| Interest | $ 25,830.51 |
| Late Charges | $ 653.16 |
| Other Charges/Fees | $ 4,095.30 |
| Title Work | $ 325.00 |
| Filing Fee | $ 226.00 |
| TOTAL | $ 318,259.57 |

(App. at 98-99.) On November 2, 2012, the Tsikourises filed a motion to correct error,

challenging the finding of default, the measure of damages, and the attorney's fees. In the

supporting affidavit of Anthony Tsikouris, he averred that the real estate taxes had been

decreased as a result of a successful tax appeal. He also asserted that the Property had

sufficient equity to satisfy any outstanding taxes. The Bank responded and admitted that its

"payoff as of 11/26/2012 is $312,591.92," an amount less than the judgment obtained. (App.

at 114.) Nonetheless, the trial court denied the motion to correct error on November 28,

2012. The Tsikourises now appeal.[3]

## Discussion and Decision

### Standard of Review

The Tsikourises contend that the trial court erred when it denied their motion to

correct error following the grant of summary judgment in favor of the Bank. We generally

review the denial of a motion to correct error for an abuse of discretion. Kornelik v. Mittal

---

[3] On December 28, 2012, the Tsikourises filed a motion to stay the sheriff's sale of the Property, pending this appeal. They filed their Notice of Appeal on January 2, 2013. On January 4, 2013, the trial court granted the motion to stay the sheriff's sale, conditioned on the posting of a $250,000 bond. The bond was not posted and, on January 15, 2013, the Property was sold at a sheriff's sale.

Steel USA, Inc., 952 N.E.2d 320, 324 (Ind. Ct. App. 2011), trans. denied. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. Hawkins v. Cannon, 826 N.E.2d 658, 661 (Ind. Ct. App. 2005), trans. denied.

Here, the motion to correct error sought to set aside the entry of summary judgment. Our standard of review for appeals from summary judgment is well established:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind. 2009) (internal citations omitted).

A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute. Jones v. W. Reserve Grp./Lightning Rod Mut. Ins. Co., 699 N.E.2d 711, 713-14 (Ind. Ct. App. 1998), trans. denied. "In ruling upon a motion for summary judgment, facts alleged in a complaint must be taken as true except to the extent that they are negated by depositions, answers to interrogatories, affidavits, and admissions on trial or by testimony presented at the hearing on a motion for summary judgment." Cowe by Cowe v. Forum Grp., Inc., 575 N.E.2d 630, 633 (Ind. 1991).

The trial court's judgment arrives on appeal "clothed with a presumption of validity." Williams v. Tharp, 914 N.E.2d 756, 762 (Ind. 2009). The party appealing from a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. Knoebel v. Clark Cnty. Super. Ct. No. 1, 901 N.E.2d 529, 531-32 (Ind. Ct. App. 2009). Where the facts are undisputed and the issue presented is a pure question of law, we review de novo the grant of summary judgment. Crum v. City of Terre Haute ex rel. Dep't of Redev., 812 N.E.2d 164, 166 (Ind. Ct. App. 2004). However, if the trial court's entry of summary judgment can be sustained on any theory or basis supported by the designated materials, we must affirm. Ledbetter v. Ball Mem'l Hosp., 724 N.E.2d 1113, 1116 (Ind. Ct. App. 2000), trans. denied.

Here, the Tsikourises contend that the trial court granted summary judgment to the Bank despite genuine issues of material fact regarding (1) the existence of default on the Note; (2) the appropriate amount of damages; and (3) the appropriate amount of attorney's fees.

*Default*

The Tsikourises contend that summary judgment was granted despite the existence of a genuine issue of material fact as to whether they were in default on the Note and the Mortgage. Indiana Code section 32-30-10-3(a) provides, "if a mortgagor defaults in the performance of any condition contained in a mortgage, the mortgagee or the mortgagee's assign may proceed in the circuit court of the county where the real estate is located to foreclose the equity of redemption contained in the mortgage." To establish a prima facie

9

case that it is entitled to foreclose upon the mortgage, the mortgagee or its assign must enter into evidence the demand note and the mortgage, and must establish the mortgagor's default. McEntee v. Wells Fargo Bank, N.A., 970 N.E.2d 178, 182 (Ind. Ct. App. 2012). Once the mortgagor has established its prima facie case, the burden shifts to the mortgagor to show that the note has been paid in full or to establish any other defenses to the foreclosure. Id.

Under the terms of the Note and Mortgage, the Tsikourises were obligated to make timely payments and to pay real estate taxes. They were in default so as to support acceleration of the Note if they failed to pay in compliance with the terms of the Note and the Mortgage, or if the Bank had a good faith belief that it was insecure. Acceleration provisions are valid and enforceable in Indiana; however, a good faith belief that a creditor is insecure must be objectively reasonable under the circumstances. Smith v. Union State Bank, 452 N.E.2d 1059, 1064 (Ind. Ct. App. 1983).

In support of its motion for summary judgment, the Bank designated materials showing it was the holder of the Note. The Bank also designated an affidavit of its representative averring the existence of a delinquency. Noticeably absent was supporting documentation reflecting the current state of payments. Indeed, the Bank's counsel admitted at the summary judgment hearing that there may have been payments unaccounted for. The Bank's designated evidence, an affidavit containing a conclusory averment, is insufficient to establish default by failure to make installment payments. See McEntee, 970 N.E.2d at 183 (observing that "conclusory statements are generally disregarded in determining whether to grant or deny a motion for summary judgment" and finding a conclusory statement reflecting

10

Wells Fargo's opinion of default inadequate to establish a prima facie case of entitlement to foreclose on its mortgage).

However, this does not end our inquiry, as the Bank's allegations of default were not confined to delinquent installment payments. The Bank gave notice in its complaint that delinquent real estate taxes were at issue and later submitted an affidavit containing the averment of a bank representative that the real estate taxes were in arrears. This averment, while conclusory in nature, did not depend upon extensive calculations. The Tsikourises did not at any time dispute that they were in arrears on their real estate taxes. In light of the history of untimely payments, the prior episode of curing default, the collection of payments directly from commercial tenants, and the uncontested evidence that the real estate taxes on the Property were in arrears, a single conclusion could be drawn, that is, the Bank held an objectively reasonable belief of its insecurity. Therefore, although we expressly disapprove the conduct of foreclosure proceedings on the barest of proof, we conclude that there existed no genuine issue of material fact as to whether Bank had a good faith belief that it was insecure with respect to the Mortgage.

*Damages*

The Tsikourises also argue that the award of damages is erroneous and its motion to correct error should have been granted on this basis. We agree.

The judgment amount, according to both the Tsikourises and the Bank, does not reflect the total of payments received after the Bank filed its designated materials in support of its second motion for summary judgment. Moreover, there appears to be no evidentiary

11

support for the award of $4,095.30 as other fees and charges. We reverse the denial of the motion to correct error with regard to the requested relief of recalculation of damages. Further, we remand and instruct the court to conduct a hearing on the issue of damages.

*Attorney's Fees*

Finally, the Tsikourises contend that there exists a genuine issue of material fact concerning the amount of attorney's fees to be awarded to the Bank. According to the Tsikourises, the $2,000.00 award essentially amounts to a double recovery because the second motion for summary judgment was, with minor modification, a duplication of the first motion for summary judgment. The Tsikourises maintain that the $2,000 of attorney's fees claimed in connection with the first motion for summary judgment were paid when they cured their default in December of 2011. Also, they observe that the award of $4,095.30 in unspecified charges or fees in the foreclosure judgment may include attorney's fees.

Generally, Indiana follows the American Rule, which requires each party to pay his or her own attorney's fees. Stewart v. TT Commercial One, LLC, 911 N.E.2d 51, 58 (Ind. Ct. App. 2009), trans. denied. Parties may shift the obligation to pay such fees through contract or agreement, and courts will enforce the agreements as long as they are not contrary to law or public policy. Id. However, even under a contract, an award of attorney's fees must be reasonable. Id. The determination of reasonableness of attorney's fees necessitates consideration of all relevant circumstances. Id. Further, where the amount of the fee is not inconsequential, there must be objective evidence of the nature of the legal services and the reasonableness of the fee. Id. at 59.

Under the terms of the Note and Mortgage, the Tsikourises agreed to pay any attorney's fees incurred by Bank in collecting on the Note and Mortgage. In its affidavit for attorney's fees, costs, and expenses, the Bank's attorney requested $2,000 in attorney's fees. He stated that he had spent approximately 9.5 hours in connection with this case, and charged an hourly rate of $175, based on the experience, reputation, and ability of the lawyers performing the services, the skill required to properly perform the services, and the fees customarily charged in LaPorte County for similar services. He further alleged that he would spend additional time preparing for and attending the summary judgment hearing, preparing the Sheriff's sale bid, fielding telephone calls from the parties relating to the matter, attending the Sheriff's sale, and examining the Sheriff's deed and title policy issued in connection with the sale of the Property.

Although $2,000.00 may well be an objectively reasonable fee for foreclosure proceedings, we agree with the Tsikourises that here a genuine issue of material fact remains. We cannot discern, based upon the record of designated materials before us, whether the unspecified fees and charges in the foreclosure judgment include attorney's fees; also, there may be duplication of fees in the drafting of the first and second motions for summary judgment. We instruct the trial court upon remand to conduct a hearing with regard to attorney's fees.

## Conclusion

The trial court properly granted summary judgment in favor of Bank on its foreclosure action. However, the amount of the damages was – by all accounts – erroneous, and the trial

13

court therefore abused its discretion when it denied the motion to correct error. Additionally, the motion to correct error should have been granted as to the award of attorney's fees.

Affirmed in part, reversed in part, and remanded with instructions to conduct a hearing on damages and attorney's fees.

MAY, J., and BRADFORD, J., concur.