# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**RANDALL K. ARNDT**
Granger, Indiana

ATTORNEYS FOR APPELLEE:

**TIMOTHY J. ABESKA**
**ALICE J. SPRINGER**
Barnes & Thornburg LLP
South Bend, Indiana

**FILED**

Oct 24 2012, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

RICK SINGLETON, et al.,                          )
                                                 )
    Appellants-Defendants,                       )
                                                 )
        vs.                                 )    No. 71A04-1202-MF-83
                                                 )
FIFTH THIRD BANK,                                )
                                                 )
    Appellee-Plaintiff.                          )

APPEAL FROM THE ST. JOSEPH CIRCUIT COURT
The Honorable Michael G. Gotsch, Judge
Cause No. 71C01-1009-MF-503

**October 24, 2012**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Rick Singleton, America's Directories, Inc., America's Directories Midwest, LLC, America's Directories South, LLC, Best Delivery Systems, LLC, Best Events, LLC, Best Wings, LLC, Imagination Publications, L.L.C., Proathlete LLC, RAS Holdings LLC, Studio A Advertising LLC (collectively, "Singleton"), the Indiana Department of Revenue, and James A. Brown (together with Singleton and the Indiana Department of Revenue, "Appellants") appeal the trial court's October 27, 2011 order granting Fifth Third Bank's Renewed Motion for Entry of Agreed Final Judgment and denying Singleton's cross-motion to enforce the Forbearance Agreement. Appellants raise one issue, which we restate as whether the trial court erred in ruling in favor of Fifth Third in its October 27, 2011 order. We reverse and remand.

FACTS AND COURSE OF PROCEEDINGS

The relevant facts follow. In the years 2004 through 2008, Fifth Third Bank ("Fifth Third") made loans to Rick Singleton, America's Directories, Inc., Best Wings, LLC, and RAS Holdings LLC, each of which was guaranteed by one or more of the Singleton parties. On September 1, 2010, Fifth Third filed a Verified Complaint on Promissory Notes and Guarantees, for Replevin and Foreclosure of Mortgages and for the Appointment of a Receiver.

Fifth Third and Singleton entered into a Forbearance Agreement with an effective date of April 4, 2011. The Forbearance Agreement provided in part, under Paragraph 1(a), that Fifth Third agreed "to forbear or suspend, as applicable, during the period (the 'Forbearance Period') commencing on the date of this [Forbearance] Agreement and ending the earlier of (i) June 30, 2011 or (ii) the occurrence of any Termination Event (as

2

hereafter defined) from further pursuing" the pending litigation and the receivership proceedings under the various applicable loan documents. Appellee's Appendix at 10.

Paragraph 2(a) of the Forbearance Agreement provided in part that "[e]ach Borrower shall make payments toward the outstanding Indebtedness owing to Lender under their respective Obligations in those amounts and in the chronological order and by those dates set forth in and pursuant to that schedule attached hereto as Exhibit B." Id. at 11. Paragraph 4 of the Forbearance Agreement provided in part that "Termination Event" meant the occurrence of any of the following:

> b) Any Borrower or Guarantor shall (i) breach or fail to perform any of its covenants, obligations or agreements contained in this [Forbearance] Agreement or (ii) fail to perform any of the covenants, obligations or agreements set forth in the Loan Documents not otherwise modified herein or otherwise constituting Existing Defaults or (iii) in the event any Condition set forth in Paragraph 2 is not satisfied, in whole or in part, when performance thereof is due or within five (5) business days of when due with respect to, and solely with respect to, the payments to be made on _____,[1] 2011 as shown on Exhibit B (collectively, a "New Default"); . . . .

Id. at 13-14. Exhibit B to the Forbearance Agreement contained the following:

**PAYMENT SCHEDULE**

| DATE DUE | AMOUNT |
|---|---|
| Upon Execution of the Agreement by the Parties | $ 500,000 |
| April 15, 2011 | $ 250,000 |
| April 30, 2011 | $ 250,000 |
| May 30, 2011 | $ 250,000 |
| June 30, 2011 | $ 350,000 |

---

[1] This blank was not completed in the copies of the Forbearance Agreement contained in the parties' appendices.

Id. at 24.  According to Paragraph 5 of the Forbearance Agreement, upon the occurrence of a Termination Event, Fifth Third would be entitled to file an Agreed Judgment and reinstate the receivership proceedings.

In the late afternoon on June 6, 2011, Singleton initiated a wire transfer from its bank, Mutual Bank, to Fifth Third to make payment of the amount due on May 30, 2011, and Fifth Third received the payment on the morning of June 7, 2011.[2]  Singleton filed a motion for declaratory judgment, and Fifth Third filed a cross-motion for entry of agreed final judgment and to reinstate receivership.  At a hearing on June 17, 2011, Singleton argued that the payment initiated on June 6, 2011, was timely because the Forbearance Agreement required only that payment was required to be made by the applicable dates and the Forbearance Agreement did not require that the payments to be received by Fifth Third by those dates.  Fifth Third claimed that the payment was untimely and constituted a Termination Event under the Forbearance Agreement. Fifth Third argued that the Forbearance Agreement required that payment had to be received by Fifth Third and "in our hands" no later than the applicable due dates.  Appellants' Appendix at 59.  The trial court stated:

> Whether [] Singleton had the money and he could have paid it . . . or didn't have the money and barely got in the bank door at Mutual Bank before close of business and wired it out at that time, it really is not germane to the decision that the Court has to make about the interpretation of the contract.
>
> * * * * *
>
> Well, it seems to me that one side is asking me to read something into the contract that doesn't appear in the contract.  And that's not my role.

_____
[2] The date of June 6, 2011, was five business days after May 30, 2011.  As noted infra, Appellants make no arguments regarding a five day grace period as to the June 30, 2011 payment.

4

So if they wanted it to say "in hand" or they wanted it to say "it has to be received by," then they should have put that in the contract. That's not in the contract. It says it has to be paid by. Paid by to me means that you take the action to actually pay the money. It doesn't[] mean that the money is received. It doesn't mean that the money isn't held up by the federal wire transfer act. You took the action you had to take to pay the funds.

* * * * *

I can decide this case on the fact before me, which is that a wire transfer was paid to the bank, was initiated in a timely manner, and it was not receipted apparently until the next morning. The fact that it was not receipted until the next morning had nothing to do with [Singleton]. It had to do with the actions that take place between the banks for the protection of the banks and had nothing to do with the fact that [Singleton] attempted to comply and did in fact comply with the terms of the contract.

So to the extent that the Court needs to make a declaratory finding, the Court does declare that the payment that was made on June 6 was made in a timely manner pursuant to the terms of the forbearance agreement and the Court so finds.

* * * * *

[T]he next payment is due, and there is no grace period for that payment. So that needs to be done by the 30th of June. The Court notes today is the 17th, a Friday. That seems that some time next week hopefully the bank can get the lien released and then payment can be made the following week in a timely manner, the $350,000. . . .

Id. at 62-63. The court granted Singleton's motion for declaratory judgment and denied Fifth Third's cross-motion for entry of agreed final judgment.

On June 30, 2011, Singleton obtained the funds necessary to make the final payment of $350,000 to Fifth Third. At approximately 2:30 p.m. on June 30, 2011, Michael Watkins, who represented Fifth Third, sent an e-mail message to Randall Arndt, counsel for Singleton, noting that the final payment was due on that day and inquired whether or not the payment was in progress. Arndt arrived at Rick Singleton's office in

5

the afternoon of June 30, 2011, to assist him in ensuring that the final funds were properly paid to Fifth Third. Shortly before 4:00 p.m., Arndt contacted Watkins by phone and asked what method Fifth Third would prefer to receive the final payment. Watkins directed Arndt to make a wire transfer as was done in the past. Arndt then sent a follow up e-mail message to Watkins that the final payment "will be wired today," and Watkins sent a response e-mail message stating "thank you." Id. at 48-49; Appellee's Appendix at 43.

With respect to the communications between Watkins and Arndt on the afternoon of June 30, 2011, the record includes the affidavits of Arndt, Rick Singleton, and Watkins. In his affidavit, Arndt stated that "[a]fter reading [] Watkins' e-mail, I recalled the last hearing that was conducted in this case wherein [Fifth Third] argued that the payment had to be received by a specific date regardless of the lack of such language in the Forbearance Agreement," that at the prior hearing Watkins had stated that Singleton "could have gotten the funds to the bank as late as 11:59 p.m. on the date due . . . just as long as the bank had the payment 'in-hand,'" and that Arndt "decided to . . . call [] Watkins for two purposes: (1) to keep him up-to-date as a matter of courtesy and (2) to have him confirm what method of payment was acceptable, meaning a wire transfer, payment to a branch of [Fifth Third] or other acceptable method, to avoid any claim by [Fifth Third] that the payment was not made in a timely fashion as previously claimed by [Fifth Third]." Appellee's Appendix at 42-43. Arndt further stated that "[a]s to the method of payment, [] Watkins directed me to make a wire transfer as was done in the past," that he "confirmed [] Watkins' instruction to me back to [] Watkins[] via e-mail

6

immediately after our telephone conversation ended," and that Watkins replied in an e-mail message stating "thank you." Id. at 43. Arndt also stated that he made the payment on behalf of Singleton pursuant to the instructions of Watkins and the Forbearance Agreement.

In his affidavit, Rick Singleton stated that Ardnt arrived at his office on June 30, 2011, to assist in ensuring that the final funds were paid to Fifth Third, that he and Arndt discussed various methods of making the final payment to Fifth Third, that he expressed his concerns to Arndt about the wire transfer, that Arndt had similar concerns and had brought a check from his trust account so that they had options regarding making the final payment, and that he and Arndt discussed the possibility of tendering payment to Watkins's law office, making payment to a Fifth Third branch teller or manager, and/or "wire-transferring the money (which I was opposed due to the position that Fifth Third Bank took after the previous payment)." Appellants' Appendix at 44. Rick Singleton stated that Arndt called Watkins, that he could hear Arndt's side of the conversation, that Arndt "asked which mode of payment should be taken so that the bank [would] not make a late payment claim," asked "whether we should bring the check to 'your office' . . . , bring it to a Fifth Third branch, wire-transfer the funds; or was there another method preferred by Watkins or the bank." Id. Rick Singleton further stated that, after hearing the conversation, he asked if Arndt "was sure that wiring the monies was the right thing to do," that Arndt, Rick, Rick's assistant, and Rick's father "openly debated [] Watkins['s] direction due to the action that Fifth Third took after the previous wire transaction," that he "did not trust anyone representing Fifth Third Bank at that point

7

including their counsel," and that Arndt "stated that by taking the direction of Fifth Third's counsel we would be safe." Id. Rick Singleton stated that he asked Arndt to send Watkins a message in writing, that he read the message Watkins sent back to Arndt, and that only then did he "feel comfortable enough to wire the monies." Id. at 45.

In his affidavit, Watkins stated that he received a phone call from Arndt on June 30, 2011, asking him what method Fifth Third would prefer to receive the final payment. Watkins further stated:

> I took [] Arndt's inquiry as rhetorical because Fifth Third had required that all payments be made by wire transfer, and payment by wire transfer had been the course of dealing established by the parties with respect to each prior payment. Moreover and based on (i) lateness of the hour and not having authority from Fifth Third to agree to any other method of payment, (ii) the Court's comments at the June 17, 2011 hearing urging [Singleton] to make actual payment in hand of the Final Payment by the June 30, 2011 deadline and . . . [the] response that [Singleton] would bring the payment in cash in a briefcase if necessary to meet the deadline, (iii) further recalling from the hearing that [] Arndt was aware of the Bank's position that 'making payment' meant received, in hand and (iv) not intending to give advice to [] Arndt or his clients respecting [Singleton's] responsibilities under the Forbearance Agreement and the ramifications in the event they would fail to perform, I responded to [] Arndt's inquiry with words to the effect of "by wire transfer, as always."
>
> * * * * *
>
> Believing [] Arndt's email message meant [Fifth Third] would actually receive payment in hand yet that day (June 30, 2011) based on [] Arndt's representation, I replied with a courtesy "thank you."

Id. at 48-49 (footnotes omitted).

Singleton initiated the final payment via a wire transfer from Mutual Bank to Fifth Third at 3:39 p.m. Central Time on June 30, 2011, and the "Effective Date" and the "Entered Date" set forth on the wire transfer receipt was June 30, 2011. Appellee's

8

Appendix at 25. The wired funds were received by Fifth Third on the morning of July 1, 2011.

On July 7, 2011, Fifth Third filed a Renewed Motion for Entry of Agreed Final Judgment and Request for Evidentiary Hearing in which it argued that the final payment under the Forbearance Agreement was untimely because Fifth Third received the funds on July 1, 2011.[3] Singleton filed a Response to [Fifth Third's] Renewed Motion to Enter the Agreed Judgment, Objection to an Evidentiary Hearing, and Cross-Motion to Enforce the Forbearance Agreement.

On August 22, 2011, the court held a hearing on the issue of the final payment under the Forbearance Agreement at which the parties reiterated their positions and arguments regarding the proper interpretation of the timeliness of payments under the Agreement. Fifth Third argued that "the operative inquiry is when was the money actually received by Fifth Third?" and that "the money actually being transferred by the fed and the money actually arriving at Fifth Third, doesn't happen until July 1." Transcript at 18. The court stated "I guess, what that means then is that [Singleton] really needed to send the money on the 29th," and Fifth Third stated "[i]f they were going to wire transfer it." Id. at 18-19. The court also stated "basically what you're telling me is that if we were really going to effectuate the terms of the contract here and we were going to use the course of conduct . . . , which was wire transactions," that "they really didn't have until the 30th of June to transfer the money; they had to transfer the money

---

[3] The affidavit of David Garcia, a vice president at Fifth Third, stated that "[t]he amount of the judgment to which [Fifth Third] is entitled pursuant to the Agreed Final Judgment is $511,851.19, as of July 5, 2011 . . . ." Appellee's Appendix at 29.

probably before the 30th of June or certainly early in the day on the 30th of June," that "there was an unwritten rule within the contract that says this transaction must occur on or before noon on the 30th otherwise the wire transfer won't be effectuated and the payment won't be received until the following day, which is in contravention of the agreement," and that "that's basically the position[] right?," and Fifth Third responded "Close." Id. at 19. The court also asked counsel for Fifth Third the reason for Watkins's direction to wire the funds, stating "[t]his time [Singleton] did call and say, here we were. We do have the funds. We're ready to tender. What do you want us to do? And [Watkins] says, wire," and counsel for Fifth Third responded "Nothing else on that." Id. at 23.

Singleton argued that "all of these significant things that Fifth Third now claims that it needs are not contained in the forbearance agreement." Id. at 25. Singleton argued that no language in the Forbearance Agreement required Fifth Third to have the "money in hand" by the due date but instead only required that the money "was paid" and that the money "was paid the second [Singleton] released that money." Id. at 26. Singleton further argued that "there's a difference between [Singleton] paying in good faith, making sure he's complying with the forbearance agreement, and then having money released through a federal wire system that nobody has control over other than the federal wire system to my knowledge." Id. at 27. Singleton also argued that if Fifth Third had desired receipt of the funds by June 30, 2011 instead of payment, then it would have included language to that effect in the Forbearance Agreement. Singleton also noted that the language had not changed from the June 17, 2011 hearing and that Singleton tried to

10

comply with the Forbearance Agreement. Arndt also noted the statement in Watkins's affidavit which stated "Believing [] Arndt's email message meant [Fifth Third] would actually receive payment in hand yet that day (June 30, 2011) based on [] Arndt's representation, I replied with a courtesy 'thank you'" and argued "He didn't believe that on June 17. How could me saying I'm going to wire it today cause that belief?" Id. at 36.

Near the end of the hearing, the court asked the parties whether Mutual Bank was obligated to transfer the funds as soon as it received a direction to wire the funds to Fifth Third and whether Mutual Bank had any agency relationship under the federal banking rules, and the parties agreed to submit briefs on that issue. On August 29, the parties filed supplemental briefs. In its brief, Fifth Third set forth certain provisions of Ind. Code §§ 26-1-4.1[4] and argued that "the regulations relating to transfer of funds through the Fedwire system confirm that the payment was made on July 1, 2011," that the wire transfer request was revocable, and that Mutual Bank was not the agent of Fifth Third. Appellee's Appendix at 65.

In its brief, Singleton argued that Mutual Bank did not act as agent for either party and that Singleton was unable to revoke payment of the funds once they were placed in Arndt's IOLTA account. Singleton set forth certain provisions of the Code of Federal Regulations and argued that "[a]lthough this explanation of the FedWire does not directly answer this court's inquiry, [Singleton] believe[s] that it shows that the FedWire is a system with numerous requirements, obligations and pitfalls that are dissimilar to

---

[4] "IC 26-1-4.1 may be cited as the Uniform Commercial Code-Funds Transfers." Ind. Code § 26-1-4.1-101.

knowing the delays and other risks that could arise from using the postal service," that Singleton "believes that the FedWire system is so complex that it requires an expert to explain its processes," that "Regulation J does not address whether after the initiation of the originator's payment order, if the originator may revoke the payment order," and that "when the payment order was issued, [] Arndt could reasonably believe that he had no ability to revoke the FedWire . . . ." Appellants' Appendix at 33.

On October 27, 2011, the court entered an order which provided in part that generally the federal wire transfer system is a same-day value transfer system but that payment may be transferred on a subsequent day or may be cancelled, that it was uncontested that the wire transfer of funds was not received by Fifth Third until July 1, 2011, and that Singleton failed to make a timely payment which constituted a breach or failure to perform a specific obligation in the Forbearance Agreement. The order further provided that Singleton "had unfettered control of when and where to make the final payment," that it "chose to replicate the problem that was created by the [previous] wire transfer," that "[i]t is axiomatic that the party who is best able to avoid a loss should bear it," that Singleton was "in the best position to prevent a late payment," that "to accept [Singleton's] arguments, the Court would have to assume that [Singleton was a] mere automaton[], incapable of independent judgment and free will," and that "the equities are on the side of [Fifth Third]." Id. at 26. The court granted Fifth Third Bank's Renewed Motion for Agreed Final Judgment and denied Singleton's motion for declaratory judgment or cross-motion to enforce the Forbearance Agreement.

12

On December 14, 2011, the court entered the Agreed Final Judgment. Appellants filed a motion to correct error, which the court denied.

ISSUE AND STANDARD OF REVIEW

The issue is whether the court erred in granting Fifth Third's Motion for Entry of Agreed Final Judgment and denying Singleton's cross-motion to enforce the Forbearance Agreement. Where a trial court enters findings of fact and conclusions of law, first we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. In re Guardianship of Phillips, 926 N.E.2d 1103, 1106-1107 (Ind. Ct. App. 2010). The specific findings control only as to the issues they cover, and a general judgment standard applies to issues upon which the trial court made no findings. Id.; Rea v. Shroyer, 797 N.E.2d 1178, 1181 (Ind. Ct. App. 2003). When making this determination, we neither reweigh the evidence nor assess the credibility of the witnesses. Ballew v. Town of Clarksville, 683 N.E.2d 636, 639 (Ind. Ct. App. 1997), trans. denied.

We review questions of law de novo and owe no deference to the trial court's legal conclusions. M.K. Plastics Corp. v. Rossi, 838 N.E.2d 1068, 1075 (Ind. Ct. App. 2005); Shriner v. Sheehan, 773 N.E.2d 833, 841 (Ind. Ct. App. 2002), trans. denied. Interpretation of a contract presents a question of law and is reviewed de novo. Stewart v. TT Commercial One, LLC, 911 N.E.2d 51, 55 (Ind. Ct. App. 2009) (citing Bailey v. Mann, 895 N.E.2d 1215, 1217 (Ind. 2008)), trans. denied.

DISCUSSION

Appellants contend that the court improperly created terms in the Forbearance Agreement to include a requirement that the June 30, 2011 payment had to be "received by" or "in-hand" by that date. Appellants' Brief at 5. Appellants specifically argue that the Forbearance Agreement "does not contain any language that states that payment must be received by Fifth Third on each payment date but only that Singleton pay each sum by a final date." Id. at 8. Appellants observe that the trial court had previously ruled that the Forbearance Agreement required Singleton to make the payments by the applicable due dates and that a requirement that the amounts had to be received by Fifth Third by those dates was not included in the terms of the Forbearance Agreement. Appellants argue that the court's finding "that the [Forbearance Agreement] was a payment contract as opposed to a 'received by' contract [was a finding] that [S]ingleton could rely on in making the final payment." Id. at 9 n.2.

Appellants further argue that "Arndt placed a telephone call to Watkins to up-date Watkins and to attempt to mutually agree to make the final payment that was acceptable to Fifth Third and to avoid any further conflict," that "[a]s confirmed by Arndt's[] e-mail, Fifth Third directed the payment be sent by FedWire," and that "[t]he final payment was made on June 30, 2011 and received by Fifth Third on July 1, 2011." Id. at 9-10. Appellants maintain that between June 6, 2011 and June 30, 2011 the Forbearance Agreement "remained unmodified as to all terms and conditions," that "[f]or that matter, the method and place of payment, as directed by Fifth Third had not changed and was further confirmed as the appropriate method by Fifth Third through its attorney and

agent," and that "[a]s such, and by using reasonable business practices, Singleton could reasonably believe that the initiation of the payment to [F]ifth Third on June 6, 2011 [sic] would be [timely], pursuant to the trial court's previous finding that the payment was made in a timely manner." Id. at 11.

Appellants further assert that "by finding the June 30, 2011 payment was untimely due to receipt on the date after the payment due date is adding an essential term to the [Forbearance Agreement] that does not exist." Id. Appellants point to the fact that Fifth Third directed or consented to the payment method used by Singleton and that Fifth Third compromised and retained Singleton's payment which "belies Fifth Third's belief that the [Forbearance Agreement] had been terminated." Id. at 13-14. Appellants argue that Singleton acted in good faith and used reasonable business practices in making the June 30, 2011 payment based in part on the court's comments and holdings during the June 17, 2011 hearing, Fifth Third's directive, and the language of the Forbearance Agreement, which causes the court's October 27, 2011 order to be unjust.

Fifth Third argues that any argument advanced by Appellants that Singleton should have been able to rely on the court's determination with respect to the June 30, 2011 payment fails because law of the case is not applicable here, the court's June 17, 2011 order was merely an interlocutory order, and the court did not change its position as the court did not address the June 30, 2011 final payment which was not subject to a grace period. Fifth Third maintains that the Forbearance Agreement states that the last payment shall be paid by June 30, 2011, that "time is of the essence," that "the trial court correctly inquired into the relationship between the bank [Singleton] used to wire the

15

money and Fifth Third, as well as how the term 'paid by' is defined in applicable banking statutes and regulations," and that "[t]here is ample legal authority to support the trial court's decision that [Singleton's] June 30, 2011 payment was untimely." Appellee's Brief at 10, 12. Fifth Third argues that Appellants did not raise the argument that a "payment received by due date" term is an essential term of the contract until the motion to correct errors. Id. at 12.

Fifth Third further asserts that sophisticated parties who were both represented by counsel executed the Forbearance Agreement after extensive negotiations and that the Forbearance Agreement includes essential terms and is enforceable. Fifth Third further posits that Appellants' arguments based on equity "do not trump the contract terms" and that "there is nothing unjust or inequitable about the trial court enforcing the terms of the Forbearance Agreement, especially when the 'time is of the essence' term was included and in light of the trial court's admonition to not let the dispute arise again." Id. at 14-15.

In their reply brief, Appellants argue that, while a court may modify its original order, a person may reasonably rely on any court order when the person makes a choice in action, that parties are required to comply with court orders or potentially be held in contempt, and that Singleton's actions in this case were reasonable. Appellants further argue that Fifth Third does not dispute Appellants' claim that Fifth Third directed the method of payment. Appellants argue that the court should not place essential terms in a contract and that a term related to whether a payment is untimely so as to constitute a Termination Event under the Forbearance Agreement constitutes an essential term.

As a general rule the interpretation of the construction or legal effect of a contract is a question of law to be determined by the court. Kokomo Veterans, Inc. v. Schick, 439 N.E.2d 639, 643 (Ind. Ct. App. 1982); see also Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC, 870 N.E.2d 494, 501 (Ind. Ct. App. 2007). The unambiguous language of a contract is conclusive and binding on the parties and the court, and the parties' intent is determined from the four corners of the document. Four Seasons Mfg., Inc., 870 N.E.2d at 501. We will neither construe unambiguous provisions nor add provisions not agreed upon by the parties. Id.

A contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms. Stewart, 911 N.E.2d at 56 (citations omitted). A contract is not ambiguous merely because the parties disagree as to its proper construction. Id. When interpreting a contract, our paramount goal is to ascertain and effectuate the intent of the parties. Id. This requires the contract to be read as a whole, and the language construed so as not to render any words, phrases, or terms ineffective or meaningless. Id. This court cannot make a contract for the parties, nor are we at liberty to revise a contract, or supply omitted terms while professing to construe it. Mead Johnson & Co. v. Oppenheimer, 458 N.E.2d 668, 670 (Ind. Ct. App. 1984); see also Orem v. Ivy Tech State College, 711 N.E.2d 864, 871 (Ind. Ct. App. 1999) (noting that the court cannot revise a contract or supply omitted terms while professing to construe it and declining to add a material term regarding job-security which does not appear in a release agreement), reh'g denied, trans. denied.

17

In essence the dispute is whether the funds transfer initiated by Singleton on June 30, 2011, and received by Fifth Third on July 1, 2011, constituted a Termination Event under the Forbearance Agreement. Paragraph 2(a) of the Forbearance Agreement provided in part: "Each Borrower *shall make payments* toward the outstanding Indebtedness owing to Lender . . . in those amounts and in the chronological order and by those dates set forth in and pursuant to that schedule attached hereto as Exhibit B." Appellee's Appendix at 11 (emphasis added). The payment schedule indicated that the due date for the final payment amount of $350,000 was June 30, 2011.[5]

We observe, as the parties acknowledge, that the Forbearance Agreement does not expressly provide for a particular method of payment—e.g., payment by delivery of cash, personal check, money order or cashiers check, funds-transfer system, etc.—or that certain possible methods of payment would or would not be acceptable to or accepted by Fifth Third. The Forbearance Agreement did not require Singleton to make the final payment using a funds-transfer system and is silent as to the date a payment would be deemed made if payment was made using a funds-transfer system or other method of payment.[6]

Moreover, the Forbearance Agreement does not provide by either express reference or by implication that any payment under the Forbearance Agreement made by

---

[5] Appellants do not argue that the Forbearance Agreement provided for a grace period of five business days with respect to the final payment due on June 30, 2011.

[6] In his affidavit in the record, Watkins stated: "I took [] Arndt's inquiry as rhetorical because Fifth Third had required that all payments be made by wire transfer, and payment by wire transfer had been the course of dealing established by the parties with respect to each prior payment." Appellants' Appendix at 48.

means of a funds-transfer system[7] would be deemed paid, for purposes of timeliness of the payment or the determination of a Termination Event under the Forbearance Agreement, when the payment order was placed or issued by a sender to an originator's bank/receiving bank,[8] when the funds are transferred from the originator's bank/receiving bank to the beneficiary or the beneficiary's bank,[9] the execution date of a payment order,[10] the payment date of a payment order,[11] or the date a payment order was unable to be cancelled,[12] as each of those activities or terms may be defined or addressed by one or

---

[7] "'Funds-transfer system' means a wire transfer network, automated clearing house, or other communication system of a clearing house or other association of banks through which a payment order by a bank may be transmitted to the bank to which the order is addressed." Ind. Code § 26-1-4.1-105(a)(5).

[8] "A payment order is issued when it is sent to the receiving bank." Ind. Code § 26-1-4.1-103(c).

[9] Ind. Code § 26-1-4.1-209(b) addresses the acceptance of a payment order by a beneficiary bank.

[10] "'Execution date' of a payment order means the day on which the receiving bank may properly issue a payment order in execution of the sender's order. The execution date may be determined by instruction of the sender but cannot be earlier than the day the order is received and, unless otherwise determined, is the day the order is received. . . ." Ind. Code § 26-1-4.1-301(b).

[11] "'Payment date' of a payment order means the day on which the amount of the order is payable to the beneficiary by the beneficiary's bank. The payment date may be determined by instruction of the sender but cannot be earlier than the day the order is received by the beneficiary's bank and, unless otherwise determined, is the day the order is received by the beneficiary's bank." Ind. Code § 26-1-4.1-401. See also 12 CFR § 210.31 ("(a) Payment to a receiving bank. Payment of a Federal Reserve Bank's obligation to pay a receiving bank (other than a Federal Reserve Bank) occurs at the earlier of the time when the amount of the payment order is credited to the receiving bank's account or when the payment order is sent to the receiving bank. (b) Payment to a beneficiary. Payment by a Federal Reserve Bank to a beneficiary of a payment order, where the Federal Reserve Bank is the beneficiary's bank, occurs at the earlier of the time when the amount of the payment order is credited to the beneficiary's account or when notice of the credit is sent to the beneficiary.").

[12] Ind. Code § 26-1-4.1-211 provides for the conditions which must be met in order for a cancellation or amendment of a payment order to be effective and provides in part that "[a]fter a payment order has been accepted, cancellation or amendment of the order is not effective unless the receiving bank agrees or a funds-transfer system rule allows cancellation or amendment without agreement of the bank." Ind. Code § 26-1-4.1-211(c).

The Uniform Commercial Code Comment provided with respect to this statutory provision, in paragraph 3, states in part that "[i]f the receiving bank has accepted the order, it is possible to cancel . . .

more provisions of Ind. Code §§ 26-1-4.1. <u>See</u> Ind. Code § 26-1-4.1-106 (providing in part that "[a] receiving bank may fix a cut-off time or times on a funds-transfer business day for the receipt and processing of payment orders and communications canceling or amending payment orders" and that "[a] cut-off time may apply to senders generally or different cut-off times may apply to different senders or categories of payment orders"); Ind. Code § 26-1-4.1-501 ("Except as otherwise provided in IC 26-1-4.1, the rights and obligations of a party to a funds transfer may be varied by agreement of the affected party"). Further, Fifth Third does not cite to authority or support for the proposition that, absent an express statement to the contrary contained in a forbearance agreement or other loan document, that the parties to such a loan or forbearance agreement are deemed to have intended for any certain definitions or provisions of Ind. Code §§ 26-1-4.1 to govern the interpretation of the agreement's payment provisions or, at a minimum, the timeliness of payments under the agreement. As previously stated, the parties' intent is determined from the four corners of the document. <u>Four Seasons Mfg., Inc.</u>, 870 N.E.2d at 501.

---

but only if the requirements of subsection (c) are met," that "[t]he communication . . . cancelling the payment order must be received in time to allow the bank to act on it before the bank issues its payment order in execution of the sender's order," that "[i]f a payment order does not specify a delayed payment date or execution date, the order will normally be executed shortly after receipt," that "[t]hus, as a practical matter, the sender will have very little time in which to instruct cancellation or amendment before acceptance," that "[i]n addition, a receiving bank will normally have cut-off times for receipt of such communications, and the receiving bank is not obliged to act on communications received after the cut-off hour," and that "[c]ancellation by the sender after execution of the order by the receiving bank requires the agreement of the bank unless a funds transfer rule otherwise provides."

The Comment further states that "[t]he statute does not state how or when the agreement of the receiving bank must be obtained for cancellation after execution," that "[i]f the receiving bank has already executed the sender's order, the bank would not consent to cancellation unless the bank to which the receiving bank has issued its payment order consents to cancellation of that order," that "[i]t makes no sense to allow cancellation of a payment order unless all subsequent payment orders in the funds transfer that were issued because of the cancelled payment order are also cancelled," and that "if a receiving bank consents to cancellation of the payment order after it is executed, the cancellation is not effective unless the receiving bank also cancels the payment order issued by the bank."

We are not at liberty to supply omitted terms while professing to construe a contract. See Mead Johnson, 458 N.E.2d at 670. Accordingly, we decline to expand upon the general language in the Forbearance Agreement that Singleton "shall make payments," see Appellee's Appendix at 11, to include a more specific requirement that a payment, if made by a funds-transfer system as contemplated by Ind. Code §§ 26-1-4.1, must be made by issuing a payment order at a time and with instructions calculated to ensure, taking into account any applicable statutory requirements or possible variations,[13] that the funds would be received or otherwise deposited into Fifth Third's account by the applicable due date. The Forbearance Agreement does not include such a specific requirement. We conclude that Singleton's action of issuing an order to wire the funds for the final payment on June 30, 2011 constituted "mak[ing] payment[]" and did not constitute a Termination Event under the Forbearance Agreement. See id.

Further, while the trial court's June 17, 2011 ruling related to Singleton's payment on June 6, 2011 rather than the payment on June 30, 2011 and the interpretation of the Forbearance Agreement presents a question of law which we review *de novo*, see Stewart, 911 N.E.2d at 55, we observe that Singleton's actions were not inconsistent with the trial court's previous ruling on the issue of the timeliness of payments made by wire transfer under the Forbearance Agreement, that at a minimum Watkins also believed Fifth Third required payments by wire transfer and informed Arndt that Singleton should

_____

[13] "Except as otherwise provided in IC 26-1-4.1, the rights and obligations of a party to a funds transfer may be varied by agreement of the affected party." Ind. Code § 26-1-4.1-501.

21

wire the final payment,[14] and thus that the court's findings that Singleton "chose to replicate the problem" and "the equities are on the side of [Fifth Third]," see Appellants' Appendix at 26, are not supported by the evidence.[15]

Based upon the Forbearance Agreement and Watkins's directive to wire the funds to make the final payment, we conclude that Singleton's payment was not untimely and did not constitute a Termination Event under the Forbearance Agreement. Accordingly, the trial court erred in granting Fifth Third Bank's Renewed Motion for Entry of Agreed Final Judgment and denying Singleton's cross-motion to enforce the Forbearance Agreement. We reverse the court's October 27, 2011 order and remand for further proceedings consistent with this opinion.

For the foregoing reasons, we reverse and remand for further proceedings.

Reversed and remanded.

FRIEDLANDER, J., and PYLE, J., concur.

---

[14] Watkins stated: "I took [] Arndt's inquiry as rhetorical because Fifth Third had required that all payments be made by wire transfer . . . ." Appellants' Appendix at 48. Watkins also stated that he responded to Arndt's inquiry "with words to the effect of 'by wire transfer, as always.'" Id. Watkins had argued at the June 17, 2011 hearing related to the timeliness of the previous payment that Singleton "could have brought in $250,000 cash . . . ." Appellants' Appendix at 59.

[15] While it may be true that in equity "the party who is best able to avoid a loss should bear it," see City Sav. Bank v. Eby Const., LLC, 954 N.E.2d 459, 465 (Ind. Ct. App. 2011), trans. denied, we note that a party either performs or fails to perform the payment terms of an agreement, and in our view the fact that Singleton could have avoided any possible conflict regarding the interpretation of the payment terms by making payment earlier than required under the Forbearance Agreement does not provide additional support that a breach occurred or that a payment was untimely. That is, either Singleton's payment did or did not constitute a Termination Event under the Forbearance Agreement. Although Singleton may have "had several options that would have ensured the payment was made on or before June 30, 2011" and "could have taken the initiative to bring cash to Fifth Third," see Appellants' Appendix at 26 n.6, the Forbearance Agreement did not require Singleton to pursue the other options and requiring it to do so, even if it could have possibly avoided Fifth Third's claim of breach, would be to require more than performance under the terms of the Forbearance Agreement.