**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANTS:

**KIRK A. PINKERTON**
**SCOTT B. COCKRUM**
Hinshaw & Culbertson LLP
Schererville, Indiana

ATTORNEYS FOR APPELLEES:

**JACK A. KRAMER**
Westland Kramer & Bennett, P.C.
Schererville, Indiana

**KEVIN C. SMITH**
Smith Sersic
Munster, Indiana

FILED
Jun 27 2013, 9:15 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

NEPHROLOGY SPECIALISTS, P.C., )
SHAHABUL ARFEEN, M.D., SANJEEV )
RASTOGI, M.D., MAHER AJAM, M.D. and )
RAIED ABDULLAH, M.D., )
)
    Appellants/Defendants/Counter Plaintiffs, )
)
    vs. ) No. 45A03-1212-CT-535
)
ASIM CHUGHTAI, M.D., RAFAEL FLETES, )
M.D., KUPUSAMY UMAPATHY, M.D., )
A.J. PAMPALONE, D.O., BRYAN WALDO, M.D., )
STEVEN MISCHEL, D.O., MARISELA VARELA, )
M.D., DAVID ASHBACH, M.D., and KRISTOPH )
GIRICZ, M.D. )
)
    Appellees/Plaintiffs/Counter Defendants, )
)
)
NEPHROLOGY SPECIALISTS, P.C., )
)
    Third Party Plaintiff, )
)
    vs. )

NORTHWEST INDIANA NEPHROLOGY, P.C.,  )
DAN ZIMMERMAN, and JAYNE LLOYD,  )
                                                                   )

      Third Party Defendants.  )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Michael N. Pagano, Special Judge
Cause No. 45D09-1206-CT-11

**June 27, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

Case Summary and Issue

Nephrology Specialists, P.C. ("NSPC"), brings an interlocutory appeal of the trial court's denial of its motion for injunctive relief. NSPC presents several issues on appeal, one of which we find to be dispositive and restate as whether the trial court abused its discretion in determining that certain non-compete contractual provisions were rescinded following an August 2011 board meeting. Concluding that the trial court did abuse its discretion and that the non-compete provisions remained in place, we reverse.

Facts and Procedural History

NSPC is a professional corporation that provides renal care to patients in northwest Indiana. At the times relevant to this appeal, all of the appellee physicians (the "Departing

2

Physicians") were employees of NSPC, and at least some of them were also shareholders and directors of NSPC.[1]

In 2009, NSPC adopted its 2009 Amended and Restated Bylaws, which remained the corporation's bylaws until mid-2011. Those bylaws included a section regarding amendments, which stated that "The power to make, alter, amend, or repeal these Amended and Restated Bylaws is vested in the Board of Directors by a vote of a majority thereof, unless the Articles of Incorporation provide for the adoption, amendment or repeal by the shareholders . . . ." Appellant Appendix at 92.[2]

In May 2011, NSPC began discussing proposed changes to its governance structure and amendments to its bylaws. Specifically, NSPC was considering amending its bylaws to require a supermajority (70%) to make material changes to employment contracts, which would include the elimination of non-compete provisions from those contracts.[3] A meeting was scheduled for June 23, 2011, to vote on the supermajority amendment, among other amendments. Prior to that meeting, NSPC's attorney, Laura Seng, circulated a document setting forth the proposed bylaw amendments and outlining the amendment process. Seng noted that to adopt the amendments, the process would be that "someone make a motion to accept the Structure as written (or as proposed) as an Amendment to the Bylaws to be

---

[1] By the end of the August 2011 board meeting, all of the appellee physicians were shareholders and directors of NSPC, in addition to being employees.

[2] NSPC's Articles of Incorporation were not contained in the appellate record provided for this case, but neither party argues that they contained relevant provisions regarding amending the corporate bylaws.

[3] Several of the Departing Physicians had such non-compete provisions in their employment contracts, while some of the Departing Physicians did not.

3

effective June 24." Brief of Appellees at 3. The board meeting minutes from June 23, 2011, reflect that the proposed changes to the bylaws were discussed, and

> [t]he only change proposed was to allow election of officers and Management Committee, by majority of board members present, providing that a supermajority of board members are present for election to be valid. Motion by Dr Arfeen to approve these Bylaws with changes noted above was made. Dr Pampalone seconded and motion approved. Motion to approve all other suggestion items as noted in italicized sections of the document except items 5A and 5B (that are to be replaced by above proposed changes), made by Dr Mischel, seconded Dr Pampalone, and passed.

Appellant App. at 36-37.

On August 23, 2011, another board meeting was held. At that meeting, three of the Departing Physicians were added to the NSPC board, the board adopted a resolution, and a vote was taken to eliminate the non-compete provisions from physician contracts. The vote to remove the non-compete provisions was eight votes in favor and five votes against—a simple majority, but not a supermajority. The resolution that was passed contained two relevant paragraphs, paragraphs two and three of the resolution:

> [2] BE IT FURTHER RESOLVED, that every act of the Board of Directors of the Corporation for the benefit and/or on behalf of or for the Corporation as approved, the members of the Board of the Directors at such time, and from the date of the incorporation of the Corporation through the date of this meeting be, and hereby is ratified, approved and confirmed.

> [3] BE IT FURTHER RESOLVED, that the Board of Directors of the Corporation hereby ratify, approve and confirm the 2009 Amended and Restated Bylaws of the Corporation.

Br. of Appellants at 12. It seems that in the aftermath of the August meeting, there was confusion among the members, as well as attorney Seng, as to whether the vote to remove the non-compete provisions had passed.

4

In March 2012, the Departing Physicians began resigning from NSPC, and eventually formed their own corporation, practicing in the area proscribed by the non-compete provisions of their contracts with NSPC. In May 2012, the Departing Physicians filed suit against NSPC, seeking, among other things, a declaration that the non-compete provisions were unenforceable. NSPC filed a motion for temporary restraining order and for permanent injunctive relief. The trial court held a hearing on NSPC's motion in December 2012. Following the hearing, the trial court issued a written ruling with lengthy analysis, and denied NSPC's request for injunctive relief. This interlocutory appeal followed.

### Discussion and Decision

#### I. Standard of Review

We generally review interlocutory orders under an abuse of discretion standard. In re Estate of Long, 804 N.E.2d 1176, 1178 (Ind. Ct. App. 2004). An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law. Id. Interpretation of a contract is generally a question of law. F.E. Gates Co., Div. of Blakley Corp. v. Hydro-Techs., Inc., 722 N.E.2d 898, 903 (Ind. Ct. App. 2000), trans. denied.

#### II. Board Meetings and Non-Compete Provisions

At the heart of this dispute is whether the non-compete provisions contained in some of the Departing Physicians' contracts remained intact following the August 2011 board meeting. The trial court found that the June meeting amended the bylaws such that a supermajority was required to remove the non-compete provisions, but that the August

5

resolution caused the bylaws to revert to an older version that did not impose a supermajority requirement, such that when the vote to remove the non-compete provisions was held, it passed when it was supported by a simple majority.

The Departing Physicians do not take issue with the trial court's determination that a supermajority was required following the June meeting, and we agree that such an amendment was in place following that meeting. The parties, however, disagree as to what transpired at the August meeting. The disagreement centers around the two paragraphs of the resolution transcribed above, and whether their wording caused the corporate bylaws to revert to the 2009 version, or whether instead the 2009 version was affirmed along with all amendments that had been made since then, including the recent June amendment requiring a supermajority to alter contracts.

The Departing Physicians argue that the trial court correctly determined that the resolution adopted at the August meeting wiped the slate clean and reinstated the 2009 bylaws (which did not require a supermajority to make material changes to the physician contracts). NSPC, however, argues that the bylaws did not revert to an older version following that meeting, but rather the relevant portions of the resolution were largely housekeeping measures as a step toward cleaning up several years' worth of meetings which produced amendments and corporate changes that were not cleanly reflected in a single, current, and comprehensive document.[4] NSPC argues that paragraph three of the resolution

_____

[4] NSPC states that

[l]ike most companies its size, NSPC had a "cobbled together," but nonetheless official set of corporate documents and records — including its Bylaws and amendments to those Bylaws. In other words, each time that NSPC amended its Bylaws it did not create an entirely new set of documents. However, one could at all times review the current set of NSPC's Bylaws by

6

reflected an overabundance of caution, due to attorney Seng's concern that the 2009 bylaws had themselves never been properly affirmed, and is to be read in conjunction with paragraph two to convey an explicit affirmation of the 2009 bylaws as well as every act of the board since. NSPC therefore argues that the resolution adopted all of the approved bylaws and amendments up to that point, including the supermajority requirement regarding changes to physician contracts. We agree with NSPC.

When interpreting a contract, our chief goal is to ascertain and effectuate the intent of the parties. Singleton v. Fifth Third Bank, 977 N.E.2d 958, 968 (Ind. Ct. App. 2012). This requires the contract to be read as a whole, and the language construed so as not to render any words, phrases, or terms ineffective or meaningless. Id. Moreover, we must accept an interpretation of the contract that harmonizes all the various parts so that no provision is deemed conflicting with, repugnant to, or neutralizing of any other provision. Salcedo v. Toepp, 696 N.E.2d 426, 436 (Ind. Ct. App. 1998).

The view taken by the trial court and the Departing Physicians creates an internal conflict between the two relevant paragraphs of the resolution, such that all changes and amendments up to that point were affirmed, but at the same time the bylaws reverted to the 2009 version that did not contain the recent amendments; it therefore also renders meaningless the portion of the resolution affirming "every act" of the board through the date of that meeting, as under the Departing Physicians' interpretation the recent amendments are specifically not affirmed. NSPC's interpretation, on the other hand, creates a certain amount

reviewing them in conjunction with the Company's Board minutes, resolutions, and other formal corporate documents.

7

of duplication, but no conflict between the paragraphs. It perhaps would have been more logical to reverse the order of the paragraphs, if the third paragraph was included at all, so that the 2009 bylaws were affirmed and <u>then</u> all other acts of the board were affirmed, but the order of the paragraphs does not change our interpretation of the contract.

This case highlights the detail-oriented nature of corporate formalities, and how a failure (or multiple failures) to clearly record proceedings and cleanly draft documents can lead to multiple interpretations and subsequent litigation. While the current form of the resolution leaves something to be desired, we do not believe the intent was to revert back to the 2009 bylaws. The trial court concluded that NSPC could have clearly referred to the recently amended bylaws had it intended to keep them, rather than referring to the 2009 bylaws in paragraph three of the resolution. We believe the reverse—that it would have been easy for NSPC to reference acts of the board <u>up to</u> 2009, or to explicitly <u>exclude</u> the recent and significant amendments, had NSPC intended to revert back to the 2009 bylaws. Attorney Seng testified that the purpose of paragraph three was not to revert back to an older version of the bylaws, but instead to ratify all of the actions of the board, including all actions taken under the 2009 bylaws even if those actions were originally inconsistent with the Articles of Incorporation. It seems clear that the intent was to affirm the then-current bylaws, including all recent amendments, and not to revert back to an older version of the bylaws.

Because the trial court's interpretation creates an impermissible conflict between the two paragraphs of the resolution, that interpretation is clearly against the logic and effect of the facts and circumstances before the court, and thus the trial court abused its discretion in

---

Br. of Appellants at 4 (citation omitted).

holding that the resolution caused the bylaws to revert to their 2009 form without any of the subsequent amendments. It is clear the bylaws as voted on in the June 2011 amendment were the current status following the August meeting, and thus the vote to remove the non-compete provisions—which did not achieve a supermajority—failed. The non-compete provisions were intact following the August 2011 meeting.

## Conclusion

Concluding that the August 2011 resolution did not cause the corporate bylaws to revert back to a 2009 version, that a supermajority was thus required for the August vote regarding non-compete provisions, and that the vote consequently failed and the non-compete provisions remained intact—and therefore that the trial court abused its discretion in its finding to the contrary—we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

FRIEDLANDER, J., and CRONE. J., concur.